STATE OF CONNECTICUT *v.* BILLY WALLER, JR.
(14367)

PETERS, C. J., CALLAHAN, GLASS, BORDEN and BERDON, Js.

Argued March 31—decision released August 4, 1992

*Stephen D. Brown,* special public defender, with whom was *Timothy Patrick Brady,* for the appellant (defendant).

*Timothy J. Sugrue,* assistant state's attorney, with whom were *Margaret G. Radionovas,* deputy assistant state's attorney, and, on the brief, *Richard N. Palmer,* chief state's attorney, *Donald A. Browne,* state's attorney, and *Steven M. Sellers,* assistant state's attorney, for the appellee (state).

GLASS, J. After a jury trial, the defendant, Billy Waller, Jr., was convicted of possession of narcotics with the intent to sell by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b),[1] and failure to appear in the first degree

[1] General Statutes § 21a-278 (b) provides: "Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the

in violation of General Statutes § 53a-172 (a).[2] The trial court imposed a total effective sentence of ten years imprisonment, execution suspended after six years, followed by five years probation. The defendant appealed from the judgment of conviction to the Appellate Court, which affirmed the judgment. *State* v. *Waller,* 25 Conn. App. 575, 595 A.2d 916 (1991). We granted certification and now affirm the judgment of the Appellate Court.

The disposition of this appeal turns on the validity of a warrantless search of the defendant's car by the police. That search led the police to discover and to seize certain contraband from the defendant's car. The trial court denied the defendant's motion to suppress the contraband on the following factual record. On August 12, 1987, several police officers were on routine patrol in Father Panik Village, a housing project in Bridgeport. At approximately 6:15 p.m., Sergeant Joe Convertito observed what he considered to be suspicious behavior by the driver of a blue or gray Lincoln automobile. Upon

intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any narcotic substance, hallucinogenic substance other than marihuana, amphetamine-type substance, or one kilogram or more of a cannabis-type substance except as authorized in this chapter, and who is not at the time of such action a drug-dependent person, for a first offense shall be imprisoned not less than five years nor more than twenty years; and for each subsequent offense shall be imprisoned not less than ten years nor more than twenty-five years. The execution of the mandatory minimum sentence imposed by the provisions of this subsection shall not be suspended except the court may suspend the execution of such mandatory minimum sentence if at the time of the commission of the offense (1) such person was under the age of eighteen years or, (2) such person's mental capacity was significantly impaired but not so impaired as to constitute a defense to prosecution."

[2] General Statutes § 53a-172 (a) provides: "Any person who, while charged with the commission of a felony and while out on bail or released under other procedure of law, wilfully fails to appear when legally called according to the terms of his bail bond or promise to appear, is guilty of failure to appear in the first degree."

running a check of the license plate, Convertito discovered an outstanding arrest warrant for the vehicle's owner. On the basis of information transmitted by Convertito over the police radio, Officer George Vivo stopped the vehicle, which was being driven by the defendant. Vivo requested the defendant's license and, upon ascertaining that he was the party named in the warrant, asked him to step out of the car. The defendant complied, at which point Officers Nick Ortiz and John Loscak arrived. Vivo then conducted a pat down search of the defendant's person, which yielded no weapons or incriminating evidence. Vivo informed the defendant that he was being arrested on the basis of an outstanding arrest warrant. The defendant told Vivo that he had taken care of the warrant. After confirming the validity of the warrant, Vivo arrested the defendant, handcuffed him and placed him in the police cruiser of Ortiz and Loscak. While the defendant remained at the scene in the cruiser, Vivo proceeded to secure the defendant's car in accordance with orders from Convertito. He opened the driver's side door of the defendant's vehicle, and on the armrest on the inside of the door he observed in plain view a glassine envelope containing a white substance. Vivo then looked in the storage area beneath the armrest, where he discovered a brown paper bag. He opened the bag and found seven glassine envelopes similar to the one that he had found atop the armrest. Vivo then drove the defendant's car to police headquarters, following Ortiz and Loscak, who had the defendant in their cruiser. The glassine envelopes found in the defendant's vehicle were subsequently determined to contain narcotics.

The defendant moved to suppress the eight packets of narcotics seized as a result of the warrantless search of his automobile on the basis that the search violated his rights under the fourth and fourteenth amendments

to the United States constitution,[3] and article first, § 7, of the Connecticut constitution.[4] The defendant argued that although the search was contemporaneous with his arrest, it nonetheless was unreasonable because he did not have access to his automobile and because no justification existed for a warrantless search. *State* v. *Waller,* supra, 576. The trial court, after a hearing, concluded that the search was lawful and denied the defendant's motion to suppress. The court determined that the stop of the defendant's car was proper, and that, because the defendant remained at the scene of the arrest while Vivo conducted the search, the search was a proper search incident to arrest pursuant to *New York* v. *Belton,* 453 U.S. 454, 460, 101 S. Ct. 2860, 69 L. Ed. 2d 768 (1981). The trial court concluded, moreover, that even if the search was not lawful as a search incident to arrest, it could, nevertheless, be upheld under the inevitable discovery rule. *State* v. *Waller,* supra.

On appeal, the Appellate Court affirmed the judgment of the trial court, concluding: "The facts of this case fall squarely within the boundaries established in *State* v. *Badgett,* [200 Conn. 412, 512 A.2d 160, cert. denied, 479 U.S. 940, 107 S. Ct. 423, 93 L. Ed. 2d 373

---

[3] The fourth amendment to the United States constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." The United States Supreme Court has held that the fourth amendment's prohibition against the use of evidence obtained as the result of an illegal search is applicable to the states through the fourteenth amendment to the United States constitution. See *Mapp* v. *Ohio,* 367 U.S. 643, 81 S. Ct. 1684, 6 L. Ed. 2d 1081, reh. denied, 368 U.S. 871, 82 S. Ct. 23, 7 L. Ed. 2d 72 (1961).

[4] Article first, § 7, of the Connecticut constitution provides: "The people shall be secure in their persons, houses, papers and possessions from unreasonable searches or seizures; and no warrant to search any place, or to seize any person or things, shall issue without describing them as nearly as may be, nor without probable cause supported by oath or affirmation."

(1986)], and its progeny. In addition, the state constitution has been construed to allow warrantless searches incident to lawful arrests. *State* v. *Delossantos,* 211 Conn. 258, 266, 559 A.2d 164, cert. denied, 493 U.S. 866, 110 S. Ct. 188, 107 L. Ed. 2d 142 (1989); *State* v. *Lizotte,* 11 Conn. App. 11, 12, 525 A.2d 971, cert. denied, 204 Conn. 806, 528 A.2d 1154 (1987). The defendant's claim, therefore, is without merit." Id., 578.

We granted the defendant's petition for certification limited to two questions: "(1) [w]hether pursuant to article first, § 7, of the Connecticut constitution, Officer Vivo's warrantless search of the defendant's car was unreasonable since the defendant did not have access to a weapon or the ability to destroy evidence of a crime"; and "(2) [w]hether the warrantless search of the defendant's car could be justified under any exception to the warrant requirement found in article first, § 7, of the Connecticut constitution, especially since the defendant was restrained from reaching his vehicle, and Officer Vivo lacked any reason to justify the search?" *State* v. *Waller,* 220 Conn. 920, 597 A.2d 343 (1991).

The defendant argues that the Appellate Court incorrectly upheld the trial court's admission into evidence of the contraband seized during the warrantless search of his automobile, under an exception to the warrant requirement of article first, § 7, of the Connecticut constitution. The defendant acknowledges that pursuant to *New York* v. *Belton,* supra, the fourth amendment to the United States constitution permits a police officer who has made a lawful custodial arrest of the occupant of an automobile, to search the vehicle's passenger compartment as a contemporaneous incident of the arrest. The defendant thus concedes that "[u]nder federal law, officer Vivo's search of [his] car would be considered reasonable as a search incident to a lawful custodial arrest." The defendant contends, however,

that article first, § 7, of the state constitution affords greater protection against warrantless searches of automobiles to Connecticut's citizens than does the federal constitution, where no independent probable cause to search exists. The state argues that the Appellate Court correctly held that the disposition of this case is controlled by our decisions in *State* v. *Badgett,* supra, and *State* v. *Delossantos,* supra. We agree with the state.[5]

Recently, on two separate occasions, we have reviewed the status of our law regarding the warrantless search of an automobile stopped in a public area, that is conducted after the driver has been arrested, handcuffed and placed in a police cruiser. *State* v. *Delossantos,* supra; *State* v. *Badgett,* supra. In *State* v. *Badgett,* supra, in determining the validity of the warrantless search of a vehicle incident to a lawful custodial arrest, pursuant to the fourth amendment to the United States

---

[5] The state argues, alternatively, that if this court concludes that the search of the defendant's vehicle was not valid as a search incident to arrest pursuant to *State* v. *Badgett,* 200 Conn. 412, 512 A.2d 160, cert. denied, 479 U.S. 940, 107 S. Ct. 423, 93 L. Ed. 2d 373 (1986), and *State* v. *Delossantos,* 211 Conn. 258, 559 A.2d 164, cert. denied, 493 U.S. 866, 110 S. Ct. 188, 107 L. Ed. 2d 142 (1989), the search should nonetheless be upheld under a "community caretaking function" exception to the warrant requirement. See *Cady* v. *Dombrowski,* 413 U.S. 433, 441, 93 S. Ct. 2523, 37 L. Ed. 2d 706 (1973); *State* v. *Tully,* 166 Conn. 126, 136, 348 A.2d 603 (1974). In essence, the state contends that under the circumstances of this case, it was reasonable for Vivo to enter the defendant's car in order to drive it from the scene. Therefore, the evidence that the defendant sought to suppress, which was in "plain view" when Vivo opened the car door, was properly admitted by the trial court. See *Coolidge* v. *New Hampshire,* 403 U.S. 443, 465–71, 91 S. Ct. 2022, 29 L. Ed. 2d 564, reh. denied, 404 U.S. 874, 92 S. Ct. 26, 30 L. Ed. 2d 120 (1971). As a second alternative argument, the state claims that the evidence would inevitably have been discovered in an inventory search pursuant to established police procedures and, therefore, was properly admitted by the trial court. See, e.g., *State* v. *Roseboro,* 221 Conn. 430, 445–46, 604 A.2d 1286 (1992). Because we conclude that Vivo's search of the defendant's automobile was proper as a search incident to arrest under *State* v. *Badgett,* supra, and *State* v. *Delossantos,* supra, we do not address these alternative claims of the state.

constitution, we stated: "Although [*New York* v. *Belton,* supra,] appears to have removed the necessity for factual analysis in each case of the actual likelihood that a person arrested may be able to obtain a weapon or destroy evidence contained in the passenger compartment of his vehicle, we construe it to allow a warrantless search of a vehicle incident to a lawful custodial arrest *only while the arrestee remains at the scene of the arrest at the time the search is conducted."* (Emphasis added.) Id., 428. Thus, in *Badgett,* we followed the rationale of *Belton* to the extent that where the defendant is restrained as the result of a lawful custodial arrest and he remains at the scene of the arrest, his vehicle may legally be searched incident to the arrest.[6] The defendant in *Badgett,* however, raised no state constitutional claim.

Our conclusion in *Badgett* was brought into sharper focus in *State* v. *Delossantos,* supra. In *Delossantos,* a state police trooper stopped the defendant for speeding. After the defendant had produced his operator's license in response to the trooper's request, the trooper, while standing at the side of the automobile, observed through the window what appeared to be the butt of

---

[6] In *State* v. *Badgett,* 200 Conn. 412, 512 A.2d 160, cert. denied, 479 U.S. 940, 107 S. Ct. 423, 93 L. Ed. 2d 373 (1986), the defendant was being driven away from the scene in a police cruiser when the search of his car yielded the incriminating evidence. We held that "the right of a police officer to search the vehicle ceases the instant the arrestee departs the scene because the arrestee's removal forecloses any possibility that he could reach for an article within the vehicle." Id., 428. The defendant asserts that *Badgett* "shows this court's unwillingness to follow the dicta or extend the holding of [*New York* v. *Belton,* 453 U.S. 454, 101 S. Ct. 2860, 69 L. Ed. 2d 768 (1981)], authorizing, without limitation, all vehicle searches incident to a lawful arrest under all circumstances." While this court in *Badgett* "refuse[d] . . . to extend the 'fiction' that the passenger compartment is *always* within reach of the arrestee . . . to circumstances . . . where the defendant is no longer at the scene of the arrest when the warrantless search was undertaken"; (emphasis in original) *State* v. *Badgett,* supra, 427; implicit in that holding was the conclusion that a search undertaken while the defendant *remains at the scene* is a valid search incident to arrest. See id., 428.

a gun under the driver's seat. The trooper ordered the defendant out of the vehicle, escorted him to the front and frisked him. The trooper then opened the front passenger door of the vehicle, reached beneath the driver's seat and removed a fully loaded revolver. After discovering that the defendant had no permit for the gun, the trooper placed him under arrest, handcuffed him and searched him. Thereafter, another trooper arrived on the scene and watched the defendant while the arresting trooper searched the interior of the defendant's automobile, including its hatchback area. In the hatchback area, the trooper found a brown paper bag, inside of which was a plastic bag that contained a white powdery substance, later determined to be cocaine.

Prior to trial, the defendant challenged the admission into evidence of the cocaine on the basis that the trooper's search of the hatchback area was illegal. The trial court admitted the challenged evidence, however, on the ground that the search was valid as a search incident to arrest. On appeal, the defendant argued that "the warrantless search of the hatchback area exceeded the permissible scope of a search incident to arrest, in violation of his rights under the fourth amendment to the United States constitution and article first, § 7, of the Connecticut constitution." Id., 263. We upheld the validity of the search under the federal constitution pursuant to *New York* v. *Belton,* supra, and its progeny. See *United States* v. *Russell,* 670 F.2d 325 (D.C. Cir.), cert. denied, 457 U.S. 1108, 102 S. Ct. 2909, 73 L. Ed. 2d 1317 (1982). In addressing the defendant's claim under the state constitution, we stated: "The defendant urges us to hold that even if the hatchback search is permissible as a search incident to arrest under the federal constitution, it should not be permissible under article first, § 7, of the Connecticut constitution. It is beyond debate that each state has the ' "sovereign right to adopt in its own Constitution individual liberties

more expansive than those conferred by the Federal Constitution." *Pruneyard Shopping Center* v. *Robins,* 447 U.S. 74, 81, 100 S. Ct. 2035, 64 L. Ed. 2d 741 (1980); see *Oregon* v. *Hass,* 420 U.S. 714, 718, 95 S. Ct. 1215, 43 L. Ed. 2d 570 (1975).' *State* v. *Dukes,* 209 Conn. 98, 104, 547 A.2d 10 (1988). In considering the level of individual protection and the scope of a warrantless search of an automobile under article first, § 7, of the Connecticut constitution, we have observed that 'our automobile exception permits a warrantless search of an automobile whenever the police have probable cause to do so. See, e.g., *State* v. *Badgett,* [supra]. It is also correct that we have recognized that the police may make a search without a warrant incidental to a lawful custodial arrest. Id., 424; see *New York* v. *Belton,* supra; *State* v. *Shaw,* 186 Conn. 45, 48, 438 A.2d 872 (1982).' *State* v. *Dukes,* supra, 120–21." *State* v. *Delossantos,* supra, 265–66.

In *Delossantos,* therefore, we recognized that our *state* constitution permits law enforcement officers to conduct a warrantless search when it is done as a contemporaneous incident to a lawful custodial arrest. We held, accordingly, pursuant to article first, § 7, that "when police make a lawful custodial arrest of an occupant of an automobile, *and the arrestee is detained at the scene,* police may contemporaneously search without a warrant the interior passenger compartment of the automobile. *State* v. *Dukes,* supra; *State* v. *Shaw,* supra." (Emphasis added.) Id., 266–67. We are persuaded, as was the Appellate Court, that the present case is governed by our holding in *Delossantos.*

The defendant attempts to distinguish *Delossantos* on the basis that the trooper in that case had independent probable cause to search the defendant's car because he had found a gun under the driver's seat. The defendant concedes, however, that the warrantless search in *Delossantos* was not upheld by this court on the basis of probable cause, but rather as a valid

search incident to arrest. While the defendant in *Delossantos* did not challenge the search of the vehicle interior other than the hatchback area, our holding in that case encompasses the facts in the present case. The defendant in this case does not contest the lawfulness of his arrest and the record, including the defendant's own testimony, establishes that he remained at the scene while Vivo searched his car. In accordance with our holding in *State* v. *Delossantos,* supra, therefore, we conclude that the trial court properly admitted the evidence obtained as a result of the warrantless search of the defendant's vehicle.

The judgment of the Appellate Court is affirmed.

In this opinion PETERS, C. J., CALLAHAN and BORDEN, Js., concurred.

BERDON, J., dissenting. We cherish our sacred constitutional right to privacy, which includes the right to be free from unreasonable searches and seizures under the fourth and fourteenth amendments to the federal constitution and under article first, § 7, of our state constitution. That right is protected by the requirement that before a police officer may search our homes or possessions, a warrant must be issued upon probable cause. A "search conducted without a warrant issued upon probable cause is *per se* unreasonable . . . subject only to a few specifically established and well-delineated exceptions." (Internal quotation marks omitted.) *State* v. *Badgett,* 200 Conn. 412, 423–24, 512 A.2d 160, cert. denied, 479 U.S. 940, 107 S. Ct. 423, 93 L. Ed. 2d 373 (1986), quoting *Schneckloth* v. *Bustamonte,* 412 U.S. 218, 219, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973); see also *Coolidge* v. *New Hampshire,* 403 U.S. 443, 454–55, 91 S. Ct. 2022, 29 L. Ed. 2d 564, reh. denied, 404 U.S. 874, 92 S. Ct. 26, 30 L. Ed. 2d 120 (1971); *Stoner* v. *California,* 376 U.S. 483, 486, 84 S. Ct. 889, 11 L. Ed. 2d 856, reh. denied, 377 U.S. 940,

84 S. Ct. 1330, 12 L. Ed. 2d 303 (1964); *State* v. *Zindros,* 189 Conn. 228, 237, 456 A.2d 288 (1983), cert. denied, 465 U.S. 1012, 104 S. Ct. 1014, 79 L. Ed. 2d 244 (1984).

There are three recognized exceptions to the warrant requirement: "(1) where searches have been undertaken incident to a lawful custodial arrest . . . (2) where there is probable cause to believe that a motor vehicle contained contraband or evidence pertaining to a crime . . . and (3) where the search has been conducted in order to inventory personal property lawfully taken into police custody. . . . These exceptions have been jealously and carefully drawn . . . and the burden is on the state to establish the exception." (Citations omitted; internal quotation marks omitted.) *State* v. *Badgett,* supra, 424. Today, the majority loses sight of the reasons why a search incident to a lawful arrest is an exception to the warrant requirement, which is, of course, to provide for the safety of the arresting officer and to preserve evidence that is easily concealable or destructible. *Chimel* v. *California,* 395 U.S. 752, 763, 89 S. Ct. 2034, 23 L. Ed. 2d 685 (1969); *State* v. *Badgett,* supra, 425.

In this case, the police officer arrested the defendant, *handcuffed him* and *placed him in the police cruiser* and then proceeded to search his car without a warrant. How, then, can the state justify this as a search incident to a lawful arrest? How could the search of the defendant's car provide the police officer with any more safety than he already had once the defendant was handcuffed and placed in the police cruiser? How could the defendant conceal or destroy any evidence in his car once he was secured in such a manner?

Nevertheless, the Supreme Court of the United States adopted a bright-line test under the fourth amendment to the federal constitution. It states that when a police

officer has made a "lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." *New York* v. *Belton,* 453 U.S. 454, 460, 101 S. Ct. 2860, 69 L. Ed. 2d 768 (1981).[1] As the majority of our court recognized in *Badgett,* the court in *Belton* adopted the fiction that the interior of a car is *always* within the immediate control of an arrestee who has recently been in the car. *State* v. *Badgett,* supra, 426. Today, however, the majority subscribes to this fiction and deprives our residents of the privacy that I feel is their constitutional right under our state constitution. "[S]earch and seizure law [becomes] uncontrollable when the rubric [is] adopted and the rationale discarded." (Internal quotation marks omitted.) *People* v. *Belton,* 55 N.Y.2d 49, 53, 432 N.E.2d 745, 447 N.Y.S.2d 873 (1982).

The majority gives no practical or principled justification for taking this course, other than relying on the dictum in *State* v. *Delossantos,* 211 Conn. 258, 266, 559 A.2d 164, cert. denied, 493 U.S. 866, 110 S. Ct. 188, 107 L. Ed. 2d 142 (1989). Surely, the majority cannot justify the *Belton* bright-line rule under our state constitution as a guide to police officers in the field. As Justice Brennan aptly noted in his dissent in *Belton,*

[1] It is difficult for me to believe that the majority in *New York* v. *Belton,* 453 U.S. 454, 101 S. Ct. 2860, 69 L. Ed. 2d 768 (1981), would apply this bright-line test to the facts of this case. The United States Supreme Court stressed a "contemporaneous" search, which would imply a situation where the police officer had to make an immediate assessment of the danger because the accused was so near the car that it would be dangerous not to search. "During the thirty to forty-five minutes that elapsed between the arrest and the warrantless search, the *Belton* Court's fear of forcing officers to make split second legal decisions during the course of an arrest evaporated and took with it the right of the officers to enter the vehicle under the guise of a search incident to [a lawful] arrest. Simply because the officers had the right to enter the vehicle during or immediately after the arrest, a continuing right was not established to enter the vehicle without a warrant." *United States* v. *Vasey,* 834 F.2d 782, 787 (9th Cir. 1987).

this rule will create far more problems for the officers than it solves. *New York* v. *Belton,* supra, 469 (Brennan, J., dissenting). First, the rule does not indicate how long after the suspect's arrest a search may be validly conducted. Id., 470. It does not say whether it matters if the police officer formed probable cause to arrest before or after the suspect left his or her car. Id. The majority in *Belton* "does not give the police any 'bright-line' answers to these questions. More important, because the Court's new rule abandons the justifications underlying *Chimel, it offers no guidance to the police officer seeking to work out these answers for himself [or herself]."* (Emphasis in original.) Id.

"It is well established that 'federal constitutional and statutory law "establishes a minimum national standard for the exercise of individual rights and does not inhibit state governments from affording higher levels of protection for such rights." . . . *Cologne* v. *Westfarms Associates,* 192 Conn. 48, 57, 469 A.2d 1201 (1984).' *State* v. *Barton,* 219 Conn. 529, 546, 594 A.2d 917 (1991). Justice Shea, when writing for an unanimous en banc court in *State* v. *Marsala,* 216 Conn. 150, 159–60, 579 A.2d 58 (1990), rejected the 'good faith' exception to the exclusionary rule adopted by the United States Supreme Court in *United States* v. *Leon,* 468 U.S. 897, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984), and noted that '[w]e have frequently relied upon decisions of the United States Supreme Court interpreting the fourth amendment, as well as other amendments to the United States constitution, to define the contours of the protections provided in the various sections of the declaration of rights contained in our state constitution. We have also, however, determined in some instances that the protections afforded to the citizens of this state by our own constitution go beyond those provided by the federal constitution, as that document has been interpreted by the United States Supreme

Court. *State* v. *Dukes,* 209 Conn. 98, 112, 547 A.2d 10 (1988); *State* v. *Stoddard,* 206 Conn. 157, 166, 537 A.2d 446 (1988); *State* v. *Kimbro,* 197 Conn. 219, 235–36, 496 A.2d 498 (1985).' " *State* v. *Geisler,* 222 Conn. 672, 684, 610 A.2d 1225 (1992).

Our state is rich in its history on the right to be free from unwarranted government intrusions. In the 1787 case of *Frisbie* v. *Butler,* 1 Kirby 213, 215 (1787), this court held that the general warrant authorizing the search of "all places, and arrest all persons, the complainant should suspect, [was] clearly illegal . . . ."[2] See also *Grumon* v. *Raymond,* 1 Conn. 40, 43 (1814); *Gray* v. *Davis,* 27 Conn. 447, 450 (1858). Indeed, "[b]efore the fourth amendment's search and seizure clause was made applicable to the states, much less the exclusionary rule, this court recognized the limits imposed on the government by the Connecticut search and seizure clause." *State* v. *Geisler,* supra, 688. Within the context of this rich history in Connecticut, I find it troubling that the majority adopts under our state constitution the bright-line rule set forth in *New York* v. *Belton,* supra.

Other jurisdictions presented with the *Belton* issue under their state constitutions rejected the United States Supreme Court's bright-line rule. See *State* v. *Brooks,* 452 So. 2d 149 (La. 1984) (following *Chimel,* the Supreme Court of Louisiana rejected *Belton* as the correct rule of police conduct under its state constitu-

---

[2] Interestingly, the court in *Frisbie* v. *Butler,* 1 Kirby 213 (1787), first raised the question of the remedy pertaining to the criminal proceedings. The court queried: "[Y]et, how far this [unlawful search] vitiates the proceedings upon the arraignment, may be a question, which is not necessary now to determine . . . ." Id., 215. Subsequently, in *State* v. *Dukes,* 209 Conn. 98, 110, 547 A.2d 10 (1988), this court recognized the exclusionary rule and expressly overruled a prior Connecticut case; *State* v. *Reynolds,* 101 Conn. 224, 237, 125 A. 636 (1924); that held to the contrary. In *Dukes,* we concluded that "the exclusionary rule is now widely recognized as an effective remedy for enforcement of the constitutional protection against unlawful searches and seizures." *State* v. *Dukes,* supra.

tion); *People* v. *Belton,* supra (applying *Chimel,* the New York Court of Appeals upheld the warrantless search of the defendant's car under the automobile exception to the warrant requirement, refusing to follow the *Belton* bright-line rule that, incident to a lawful arrest, the passenger compartment of a car can always be searched contemporaneously).

The practical aspects of adopting the bright-line rule of *Belton,* under our state constitution are frightening.[3] This is especially so because the majority's broad and sweeping language includes the right to search the car incident to a custodial arrest for a mere traffic violation.[4] At least the court in *State* v. *Dukes,* supra, 125, left the question open when it stated that "[t]here is no need for us in this case to decide what authority the officer would have under our constitution to search the vehicle for contraband when the only provocation for that was a traffic violation."

Is the majority giving a green light to police officers to invade a person's privacy by allowing them to stop the person's car for a mere traffic violation, make a custodial arrest of the driver and then search the car? Now, we all know that probably would not happen to the president of a "Fortune 500" company if he or she

---

[3] Moreover, the dangers of the rule were underscored when Justice Brennan asked the rhetorical question: "*[W]hy* is the rule . . . necessarily limited to searches of cars? What if a suspect is seen walking out of a house where the police, peering in from outside, had formed probable cause to believe a crime was being committed? Could the police then arrest that suspect and enter the house to conduct a search incident to arrest?" (Emphasis in original.) *New York* v. *Belton,* 453 U.S. 454, 470, 101 S. Ct. 2860, 69 L. Ed. 2d 768 (1981) (Brennan, J., dissenting).

[4] Cf., *People* v. *Marsh,* 20 N.Y.2d 98, 101, 228 N.E.2d 783, 281 N.Y.S.2d 789 (1967) (holding that a motorist stopped for a traffic infraction may not be searched unless, when the car is stopped, there exists reasonable grounds for believing that the driver is guilty of a crime, as distinct from a traffic offense).

was stopped for speeding. But what about a minority member of our society who happens to be operating his or her car in Father Panik Village? Or the seedy looking kid with long hair who happens to be driving in an affluent neighborhood? "The Connecticut constitution is an instrument of progress, it is intended to stand for a great length of time and should not be interpreted too narrowly or too literally so that it fails to have contemporary effectiveness *for all of our citizens.*" (Emphasis added.) *State* v. *Dukes,* supra, 115. By adopting this bright-line rule under our state constitution, the majority today adds to the perception that there is no such thing as "justice for all."

Accordingly, I dissent.