******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

BRANDON GARCIA *v.* COMMISSIONER
OF CORRECTION
(AC 33827)

Beach, Alvord and Pellegrino, Js.

*Argued October 23, 2013—officially released January 21, 2014*

(Appeal from Superior Court, judicial district of
Tolland, Schuman, J.)

*David B. Rozwaski*, assigned counsel, for the appellant (petitioner).

*Rocco A. Chiarenza*, assistant state's attorney, with whom, on the brief, were *Maureen Platt*, state's attorney, and *Kelly A. Masi*, assistant state's attorney, for the appellee (respondent).

*Opinion*

PELLEGRINO, J. The petitioner, Brandon Garcia, appeals from the summary judgment rendered by the habeas court in favor of the respondent, the Commissioner of Correction. The petitioner claims that the habeas court erred in concluding that the United States Supreme Court's decision in *Arizona* v. *Gant*, 556 U.S. 332, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009), does not apply retroactively. We agree with the court that *Gant* does not apply retroactively to the petitioner's habeas trial, and affirm the summary judgment.

The jury in the petitioner's underlying criminal trial reasonably could have found the following facts, as detailed by this court in the petitioner's direct appeal. "On June 22, 2004, undercover members of the Waterbury police tactical narcotics team . . . were surveilling the parking lot by the Shell gasoline station and convenience store . . . . The police had received numerous complaints about open drug dealing at this location and had made several narcotics arrests there previously. . . .

"Shortly after 9:30 p.m., the officers noticed Matthew Jenkins sitting in a Ford Explorer . . . . Minutes later, the [petitioner] arrived in a black Lexus. When Jenkins sounded his vehicle's horn, the [petitioner] acknowledged him. The [petitioner] parked, exited his vehicle and walked to the Explorer, carrying a white shopping bag. At 9:42 p.m., the officers observed the [petitioner] get into the Explorer, remove a smaller bag from the shopping bag and place it next to Jenkins. They observed Jenkins hand the [petitioner] a roll of cash. The [petitioner] then exited the Explorer and headed toward the convenience store. [One of the officers] arrested and searched the [petitioner], finding marijuana on his person, $2650 in one of his pockets and $570 in another pocket. . . .

"Jenkins, meanwhile, attempted to escape in his Explorer. When [two of the officers] blocked Jenkins' exit with their vehicles, Jenkins fled on foot. From [Jenkins'] Explorer, the officers recovered one bag containing 2.97 ounces of cocaine and another bag containing one half ounce of marijuana. Jenkins was apprehended subsequently. He testified at trial that when he telephoned the [petitioner] to arrange his purchase of three ounces of cocaine for $2400 and one half ounce of marijuana for $250, the [petitioner] suggested they meet at the Shell station parking lot. Jenkins also testified that he bought drugs from the [petitioner] in the manner described by the undercover officers, exchanging cash for cocaine and marijuana.

"At the arrest scene, [the officer assigned to drive the petitioner's vehicle to the police station] quickly examined the [petitioner's] vehicle to ensure that nothing in it would be disturbed or cause any danger during

transit. On the rear seat, he discovered a shoe box containing cash. In the trunk of the car, he discovered another shoe box containing cash. . . . [The officer] drove the car to the station, logged it in as evidence and conducted an inventory search of its contents. The inventory recovered included the boxes of cash from the rear seat and trunk, which contained $10,510 and $4000, respectively." *State* v. *Garcia*, 108 Conn. App. 533, 535–37, 949 A.2d 499, cert. denied, 289 Conn. 916, 957 A.2d 880 (2008).

After a jury trial, the petitioner was convicted of possession of cocaine with intent to sell by a person who is not drug-dependent in violation of General Statutes § 21a-278 (a), possession of a controlled substance with intent to sell within 1500 feet of a school in violation of General Statutes § 21a-278a (b), possession of marijuana with intent to sell in violation of General Statutes § 21a-277, and possession of marijuana with intent to sell within 1500 feet of a school in violation of § 21a-278a (b). Id., 537. On direct appeal to this court, the petitioner argued that the court erred in part by admitting into evidence any cash seized from his vehicle because it was either irrelevant or obtained without a warrant in violation of his rights pursuant to the fourth amendment to the United States constitution. Id., 537, 541.[1] We affirmed the conviction, holding that the cash seized was relevant, not overly prejudicial, and obtained in accordance with constitutional guarantees. Id., 539, 541, 546, 549–50. Our Supreme Court denied certification to appeal. *State* v. *Garcia*, 289 Conn. 916, 957 A.2d 880 (2008).

The petitioner filed a petition for a writ of habeas corpus on August 13, 2008, arguing that *Arizona* v. *Gant*, supra, 556 U.S. 332, should apply retroactively to his habeas trial. He further contends that applying *Gant* to the facts of the present case would require a conclusion that the search of his car was unconstitutional and, therefore, he is entitled to a new trial. The petitioner and the respondent filed cross motions for summary judgment. The court, noting that the retroactivity issue was dispositive, held that the rule announced in *Gant* is not retroactive and rendered summary judgment in favor of the respondent. The habeas court granted the petitioner's petition for certification to appeal. This appeal followed.

"Our standard of review is well established. Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . On appeal, we must determine whether the legal conclusions reached by the trial court are legally and logically correct . . . ." (Internal quotation marks omitted.) *J.P. Alexandre, LLC* v. *Egbuna*, 137 Conn. App. 340, 346,

49 A.3d 222, cert. denied, 307 Conn. 913, 53 A.3d 1000 (2012). The issue of whether a judicial decision is retroactive is a question of law, and our review is plenary. See *Duperry* v. *Solnit*, 261 Conn. 309, 318, 803 A.2d 287 (2002).

I

We briefly summarize the relevant precedent regarding law enforcement's ability to search a motor vehicle incident to the arrest of an occupant. In the seminal case of *Chimel* v. *California*, 395 U.S. 752, 763, 89 S. Ct. 2034, 23 L. Ed. 2d 685 (1969), the United States Supreme Court held that when police make an arrest, it is reasonable to "search . . . the arrestee's person and the area within his immediate control . . . ." (Internal quotation marks omitted.) When the police lawfully arrest the occupant of a motor vehicle, officers "may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile . . . [and] any containers found within the passenger compartment . . . ." (Footnotes omitted.) *New York* v. *Belton*, 453 U.S. 454, 460, 101 S. Ct. 2860, 69 L. Ed. 2d 768 (1981). In line with the majority of jurisdictions, we applied *Belton* broadly; see *Arizona* v. *Gant*, supra, 556 U.S. 341–43; permitting "a contemporaneous search of the entire passenger compartment of an automobile, whether or not the arrestee actually had control over the area." *State* v. *Badgett*, 200 Conn. 412, 425, 512 A.2d 160, cert. denied, 479 U.S. 940, 107 S. Ct. 423, 93 L. Ed. 2d 273 (1986); but see *State* v. *Waller*, 223 Conn. 283, 292, 612 A.2d 1189 (1992) (state constitution requires that arrestee be detained at scene at time of vehicle search). Faced with the fact that courts had used *Belton* to perpetuate the "fiction . . . that the interior of the car is *always* within the immediate control of an arrestee who has recently been in the car"; (emphasis in original; internal quotation marks omitted) *Arizona* v. *Gant*, supra, 341; the United States Supreme Court revisited the contours of the *Belton* rule in *Gant*.

In *Gant*, the defendant was handcuffed and secured in a police car for the crime of driving with a suspended license. Id., 336, 344. A subsequent search of the defendant's vehicle uncovered cocaine and a firearm. Id., 336. On appeal, the state argued, pursuant to *Belton*, that the validity of a vehicle search incident to the arrest of a recent occupant of the vehicle does not depend on whether the occupant could gain access to the interior of the vehicle at the time of the search. Id., 344. The court declined to endorse the state's broad interpretation of *Belton*, and held: "Police may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." Id., 351.[2] The petitioner argues that if the holding in *Gant* was applied retroactively to his habeas petition,

he is entitled to relief because the search of his vehicle was invalid pursuant to the fourth amendment to the federal constitution. We disagree with the petitioner with respect to the threshold issue. We conclude that *Gant* does not apply retroactively, and affirm the judgment of the habeas court.

## II

The question of retroactivity has been decided in *Teague* v. *Lane*, 489 U.S. 288, 109 S. Ct. 1060, 103 L. Ed. 2d 334 (1989), and its progeny.[3] "The threshold question is whether the rule of law under which the petitioner seeks relief is procedural or substantive in nature." *Luurtsema* v. *Commissioner of Correction*, 299 Conn. 740, 753, 12 A.3d 817 (2011).[4] If the rule is substantive, it generally applies retroactively. *Schriro* v. *Summerlin*, 542 U.S. 348, 351–52, 124 S. Ct. 2519, 159 L. Ed. 2d 442 (2004). A procedural rule, on the other hand, is only retroactive if it is considered "watershed." (Internal quotation marks omitted.) Id., 352. We conclude that, according to the *Teague* framework, *Gant* is not retroactive.

### A

A rule is substantive in nature, and generally applies retroactively, when the judicial decision announcing the rule narrows the scope of the conduct punishable under a criminal statute or is a "constitutional [determination] that place[s] particular conduct or persons covered by the statute beyond the State's power to punish . . . ." (Internal quotation marks omitted.) *State* v. *Henderson*, 130 Conn. App. 435, 447, 24 A.3d 35 (2011), appeals dismissed, 308 Conn. 702, 66 A.3d 847 (2013) (certification improvidently granted).[5] The rule announced in *Gant* applies to the conduct of police when executing a search. *Arizona* v. *Gant*, supra, 556 U.S. 351. It is therefore not substantive because it does not narrow the conduct or class of persons punishable pursuant to a criminal statute. *State* v. *Henderson*, supra, 447; see, e.g., *Luurtsema* v. *Commissioner of Correction*, supra, 299 Conn. 746–47, 753 (rule narrowing conduct punishable pursuant to kidnapping statute substantive).

### B

Rules that are not substantive under *Teague* are deemed procedural. See *Schriro* v. *Summerlin*, supra, 542 U.S. 352 n.4. Procedural rules do not apply retroactively to a habeas trial unless the rule is deemed "watershed," meaning the rule: (1) "[is] necessary to prevent an impermissibly large risk of an inaccurate conviction"; and (2) "alter[s] our understanding of the bedrock procedural elements essential to the fairness of a proceeding." (Citations omitted; internal quotation marks omitted.) *Whorton* v. *Bockting*, 549 U.S. 406, 418, 127 S. Ct. 1173, 167 L. Ed. 2d 1 (2007); accord *State* v. *Henderson*, supra, 130 Conn. App. 447. These watershed

procedural rules are "so central to an accurate determination of innocence or guilt . . . it [is] unlikely that many such components of basic due process have yet to emerge." (Internal quotation marks omitted.) *Duperry* v. *Solnit*, supra, 261 Conn. 325. In order to be classified as watershed, and therefore apply retroactively, the procedural rule must both improve the accuracy of a trial and ensure the fundamental fairness of criminal proceedings. *Sawyer* v. *Smith*, 497 U.S. 227, 242, 110 S. Ct. 2822, 111 L. Ed. 2d 193 (1990).

In *Teague*, the Supreme Court stated that the paradigm watershed procedural rule is the right to counsel pursuant to *Gideon* v. *Wainwright*, 372 U.S. 335, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963). *Teague* v. *Lane*, supra, 489 U.S. 311–12; see also *Whorton* v. *Bockting*, supra, 549 U.S. 419. A procedural rule does not rise to the watershed level unless it applies to the criminal justice system generally, and not just a narrow selection of cases. See *Teague* v. *Lane*, supra, 314–15 ("the fair cross section requirement [does] not rest on the premise that every criminal trial, or any particular trial, [is] necessarily unfair because it [is] not conducted in accordance with what we determined to be the requirements of the Sixth Amendment" [internal quotation marks omitted]).[6]

C

With these principles in mind, we consider whether the rule announced in *Gant* is a watershed rule of criminal procedure, and whether the rule improves the accuracy and ensures the fundamental fairness of a trial. The issue in *Gant* was whether a warrantless vehicle search was reasonable when the arrestee was secured and could not access potential weapons or destroy evidence still in the vehicle. See *Arizona* v. *Gant*, supra, 556 U.S. 335. *Gant* concluded that a search of a vehicle under these circumstances is unreasonable and thus violates the fourth amendment. Id., 351.

"[T]he essential purpose of the Fourth Amendment [is] to shield the citizen from unwarranted intrusions into his privacy." (Internal quotation marks omitted.) *Payton* v. *New York*, 445 U.S. 573, 588 n.26, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980). The *Gant* rule and the fourth amendment do not ensure an accurate trial, but restrict the government's authority to invade an individual's privacy. See *United States* v. *Leon*, 468 U.S. 897, 906, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984) ("[t]he wrong condemned by the [Fourth] Amendment is fully accomplished by the unlawful search and seizure itself" [internal quotation marks omitted]). Moreover, evidence obtained from a search that violates the fourth amendment does not automatically result in an inaccurate verdict which requires a new trial. *State* v. *Esarey*, 308 Conn. 819, 832, 67 A.3d 1001 (2013) (fourth amendment violations subject to harmless error). This leads to the conclusion that the accuracy of any trial is not

necessarily determined by the fact that evidence was seized in violation of *Gant*.

Similarly, the rule announced in *Gant* does not alter our understanding of the bedrock procedural elements essential to a fair trial. The *Gant* decision was justified by the important, and constitutionally protected, privacy rights of motorists. *Arizona* v. *Gant*, supra, 556 U.S. 344–45. The court reasoned that vehicle searches incident to arrest "[implicate] . . . the central concern underlying the Fourth Amendment—the concern about giving police officers unbridled discretion to rummage at will among a person's private effects." Id., 345. "[T]he Fourth Amendment protects people, not places . . . and wherever an individual may harbor a reasonable expectation of privacy . . . he is entitled to be free from unreasonable governmental intrusion." (Citations omitted; internal quotation marks omitted.) *Terry* v. *Ohio*, 392 U.S. 1, 9, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). On the basis of these basic principles, we conclude that the fourth amendment does not protect the fairness of a criminal proceeding; it "safeguard[s] the privacy and security of individuals against arbitrary invasions by governmental officials." *Camara* v. *Municipal Court*, 387 U.S. 523, 528, 87 S. Ct. 1727, 18 L. Ed. 2d 930 (1967). *Gant* therefore does not change our understanding of the bedrock procedural elements that ensure a fair trial. See *Whorton* v. *Bockting*, supra, 549 U.S. 418. We conclude that the rule announced in *Gant* is not essential to either the accuracy or fairness of a trial, and therefore is not a watershed procedural rule as contemplated by *Teague* and its progeny. We hold that *Gant* is not retroactive and does not apply to the petitioner's habeas proceeding.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The petitioner additionally claimed that his rights pursuant to article first, § 7, of the Connecticut constitution were violated. *State* v. *Garcia*, supra, 108 Conn. App. 541. This claim was deemed abandoned, however, because the petitioner did not provide a separate state constitutional analysis of that claim. Id., 541 n.3. Also, the petitioner claimed unsuccessfully that the court lacked jurisdiction to order him to forfeit the cash that was seized. Id., 550.

[2] Justice Scalia noted that "[w]here no arrest is made . . . officers may search the car if they reasonably believe the suspect is dangerous and . . . may gain immediate control of weapons. *Michigan* v. *Long*, 463 U.S. 1032, 1049 [103 S. Ct. 3469, 77 L. Ed. 2d 1201] (1983). In the no-arrest case, the possibility of access to weapons in the vehicle always exists, since the driver or passenger will be allowed to return to the vehicle when the interrogation is completed." (Internal quotation marks omitted.) *Arizona* v. *Gant*, supra, 556 U.S. 352 (Scalia, J., concurring).

[3] The petitioner asks this court to "apply *Gant* . . . in accordance with [the ruling in *Danforth* v. *Minnesota*, 552 U.S. 264, 282, 128 S. Ct. 1029, 169 L. Ed. 2d 859 (2008)] that *Teague* restrictions should not be applied to state habeas proceedings regarding state convictions." In support of this proposition, the petitioner cites *State* v. *Dukes*, 209 Conn. 98, 547 A.2d 10 (1988), and argues that "state constitutional provisions can afford individuals greater protection than federal constitutional provisions. . . . [I]t is well recognized that Connecticut constitutional protections are greater than those of the fourth amendment to the [federal] constitution."

The court in *Danforth* v. *Minnesota*, supra, 552 U.S. 282, held that "the

*Teague* decision limits the kinds of constitutional violations that will entitle an individual to relief on federal habeas, but does not in any way limit the authority of a state court, when reviewing its own state criminal convictions, to provide a remedy for a violation that is deemed 'nonretroactive' under *Teague*." Our Supreme Court interpreted this holding to mean "that the restrictions *Teague* imposes on the fully retroactive application of new procedural rules are not binding on the states." *Luurtsema* v. *Commissioner of Correction*, 299 Conn. 740, 753 n.14, 12 A.3d 817 (2011).

The court in *Luurtsema* did not overrule *Teague*'s application in Connecticut. It only recognized that the United States Supreme Court provides that states are "free to determine whether to follow the federal courts' rulings on retroactivity or to fashion rules which respond to the unique concerns of that state." (Internal quotation marks omitted.) *Danforth* v. *Minnesota*, supra, 552 U.S. 282; *Luurtsema* v. *Commissioner of Correction*, supra, 299 Conn. 753 n.14. Our Supreme Court, however, neither engaged in a *Teague* analysis nor overruled its application. See *Luurtsema* v. *Commissioner of Correction*, supra, 753 n.14.

The current state of the law in Connecticut, therefore, is that the retroactive application of new procedural rules is analyzed under the *Teague* framework. See id.; see also *Duperry* v. *Solnit*, supra, 261 Conn. 318. Regardless of whether our state constitution's reach is greater than the federal constitution, "our obligation is to follow [the *Teague* framework] until [our] Supreme Court overrules or limits it. It is axiomatic that the trial court and this court are without authority to overrule the decisions of our Supreme Court. In the absence of direction by our Supreme Court, inferior courts must continue to adhere to its decisions." *West Hartford* v. *Murtha Cullina, LLP*, 85 Conn. App. 15, 24, 857 A.2d 354, cert. denied, 272 Conn. 907, 863 A.2d 700 (2004). We therefore apply *Teague* accordingly.

[4] Before reaching the issue of whether the *Gant* rule is substantive or procedural, the petitioner argued to the habeas court that *Teague* is inapplicable because *Gant* did not announce a "new rule," but instead was a mere clarification of preexisting law. The petitioner failed to raise this claim either in his brief or at oral argument before this court. This claim is therefore abandoned, and we analyze *Gant* as announcing a new rule. See *Terese B.* v. *Commissioner of Children & Families*, 68 Conn. App. 223, 227 n.7, 789 A.2d 1114 (2002).

[5] Prior decisions have considered these constitutional determinations as an exception to the general rule that procedural rules are not retroactive. See, e.g., *Duperry* v. *Solnit*, supra, 261 Conn. 324. The United States Supreme Court clarified, however, that these are "more accurately characterized as substantive rules not subject to the bar." *Schriro* v. *Summerlin*, supra, 542 U.S. 352 n.4.

[6] Among the procedural rules that the Supreme Court has considered, yet determined not to be watershed, are: the rule that exposing a defendant to a noncapital sentence enhancement twice violates the double jeopardy clause, the rule that the state's failure to give adequate notice of evidence it intends to use in a petitioner's capital sentence proceeding violates due process, the rule that failure to instruct the jury that it could not find a defendant guilty of murder if it found a mitigating mental state violates due process, the rule that the eighth amendment bars imposition of the death penalty if a jury is led to believe that the ultimate decision rests elsewhere, the rule that pursuant to the fifth amendment, the police cannot question a suspect after he asserts the right to counsel in the context of a separate investigation, and the rule that the sixth amendment fair cross section requirement applies to the petit jury. *United States* v. *Mandanici*, 205 F.3d 519, 529 (2d Cir.), cert. denied, 531 U.S. 879, 121 S. Ct. 190, 148 L. Ed. 2d 132 (2000).