******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# EDGAR TATUM *v.* COMMISSIONER
# OF CORRECTION
## (AC 43581)

Alexander, Clark and Lavine, Js.

*Syllabus*

The petitioner, who had been convicted of murder, filed a fifth petition for a writ of habeas corpus, claiming, inter alia, that his trial counsel, appellate counsel, and his prior habeas counsel to his first, second, and third petitions had provided ineffective assistance, that his due process rights had been violated at his criminal trial, and that there had been significant developments in the science of eyewitness identification that warranted the court to vacate or modify his conviction or sentence, which the habeas court interpreted as an actual innocence claim. The habeas court rendered judgment dismissing the petitioner's claims of ineffective assistance of his trial counsel, appellate counsel, and first habeas counsel, his claim of due process violations, and his claim of actual innocence. The habeas court held a hearing on the two remaining claims and subsequently dismissed the petitioner's claim of ineffective assistance of his second habeas counsel and denied the petitioner's claim of ineffective assistance of his third habeas counsel, from which the petitioner, on the granting of certification, appealed to this court. *Held*:

1. The habeas court properly concluded that the petitioner's claims concerning ineffective assistance by his trial counsel, appellate counsel, and first habeas counsel were barred by the doctrine of res judicata; the petitioner did not allege that he was seeking different relief than the relief he sought in prior petitions alleging ineffective assistance of counsel or that there were new facts or evidence not reasonably available at the time of his original petition.

2. The habeas court properly determined that the Supreme Court's decisions in *State* v. *Guilbert* (306 Conn. 218) and *State* v. *Dickson* (322 Conn. 410) could not be applied retroactively on collateral review to the petitioner's claims concerning due process violations and actual innocence, and, therefore, the petitioner's claims were properly dismissed on the basis of res judicata:

   a. Although *Dickson* held that first-time, in-court identifications implicated due process protections and must be prescreened by the trial court, this constitutional rule did not apply retroactively on collateral review because it was neither a substantive rule nor a watershed procedural rule.

   b. The petitioner could not prevail on his claim that *Guilbert*, in which a nonconstitutional state evidentiary claim involving the reliability of eyewitness identifications was at issue, applied retroactively on collateral review: because *Guilbert* did not announce a new constitutional rule or a new judicial interpretation of a criminal statute, complete retroactive application was inappropriate; moreover, the *Guilbert* framework for evaluating the reliability of an identification that was the result of an unnecessarily suggestive identification procedure did not fall within the narrow watershed exception pursuant to *Teague* v. *Lane* (489 U.S. 288) because the rule was prophylactic, a violation of the rule did not necessarily rise to the level of a due process violation, and the rule amounted to an incremental change in identification procedures.

   c. Because the petitioner previously raised and litigated the claims pertaining to the admission of the in-court identification of the petitioner in his direct appeal, the habeas court's dismissal of the petitioner's claims of violations of due process and actual innocence was appropriate.

3. The habeas court's denial of the petitioner's claim alleging ineffective assistance by his third habeas counsel was affirmed on the alternative ground that it was barred by collateral estoppel: the doctrine of collateral estoppel precluded the petitioner from raising the issue of whether his third habeas counsel was ineffective for failing to argue claims against his appellate counsel based on their failure to challenge the witnesses' identifications because it previously had been determined that the admission at trial of the identifications of the petitioner was proper; moreover,

the habeas court correctly determined that the petitioner's third habeas counsel did not provide ineffective assistance by failing to allege and prove a claim that trial counsel was ineffective for failing to investigate and present a third-party culpability defense, the petitioner having failed to sufficiently demonstrate that the evidence was adequate to support a viable third-party culpability defense.

Argued October 19, 2021—officially released March 8, 2022

*Procedural History*

Amended petition for a writ of habeas corpus brought to the Superior Court in the judicial district of Tolland and tried to the court, *Newson, J.*; judgment denying the petition, from which the petitioner, on the granting of certification, appealed to this court. *Affirmed.*

*Kara E. Moreau* and *Emily C. Kaas*, for the appellant (petitioner).

*Mitchell S. Brody*, senior assistant state's attorney, with whom, on the brief, were *Maureen T. Platt*, state's attorney, and *Eva Lenczewski*, former supervisory assistant state's attorney, for the appellee (respondent).

*Opinion*

LAVINE, J. The petitioner, Edgar Tatum, appeals following the granting of his petition for certification to appeal from the judgment of the habeas court dismissing in part and denying in part his fifth amended petition for a writ of habeas corpus.[1] On appeal, the petitioner claims that the court improperly (1) dismissed counts one, two, and three of the petition on the basis of res judicata; (2) determined that our Supreme Court's decisions in *State* v. *Guilbert*, 306 Conn. 218, 49 A.3d 705 (2012), and *State* v. *Dickson*, 322 Conn. 410, 141 A.3d 810 (2016), cert. denied, U.S. , 137 S. Ct. 2263, 198 L. Ed. 2d 713 (2017), could not be applied retroactively to the identification claims raised in counts six and seven of the petitioner's petition; and (3) denied count five of the operative complaint alleging ineffective assistance against his third habeas counsel. We disagree and, accordingly, affirm the judgment of the habeas court.

The following factual and procedural background is relevant to our resolution of the petitioner's appeal. Of necessity, it is detailed in light of the convoluted history of this case. The petitioner was convicted of murder following a jury trial and sentenced to a term of sixty years of incarceration on April 6, 1990. In *State* v. *Tatum*, 219 Conn. 721, 595 A.2d 322 (1991), our Supreme Court affirmed the petitioner's underlying murder conviction and recited the following facts that the jury reasonably could have found in the criminal trial. "At approximately 10:30 p.m. on February 25, 1988, Larry Parrett was shot and killed in his home in Waterbury, where he lived with his girlfriend, Tracy LeVasseur. Anthony Lombardo, who lived on the same street, was also shot and wounded at the same time and place. Earlier that evening, Lombardo had been out walking his dog when he noticed a tall black man, later identified as the [petitioner], knocking on the door of Parrett's apartment. Lombardo approached the [petitioner], after having recognized him as someone he had seen at the apartment on other occasions. When LeVasseur opened the door from within, the [petitioner] forced himself and Lombardo into the living room, where LeVasseur and Parrett were smoking cocaine. LeVasseur recognized the [petitioner] as 'Ron Jackson,' a man from California who, along with other visitors from California, had spent a number of nights at the apartment selling drugs during the months preceding the incident. Parrett also had been involved in the sale of drugs. When the [petitioner] and Parrett began to argue, Lombardo and LeVasseur left the room and went into the kitchen, where three other men were present. A few moments later, Lombardo returned to the living room to find the [petitioner] pointing a gun at Parrett. Lombardo stepped between the two men, thinking that the [petitioner] might be dissuaded from firing. The [petitioner]

nevertheless fired four shots from the gun, striking Lombardo in the shoulder and fatally wounding Parrett. . . .

"That night at the Waterbury police station Lombardo was shown a photographic array from which he chose a photograph of a black man named Jay Frazer as that of the man who had shot him and Parrett. The same night LeVasseur also selected a photograph of Frazer from an array shown to her by the police. Neither array contained a photograph of the [petitioner]. One week later, however, LeVasseur went to the Waterbury police and told them that she had identified the wrong man. A nine person lineup was then conducted in which Frazer participated but the [petitioner] did not. After seeing Frazer in person, LeVasseur told the police that he was definitely not the assailant. Thereafter, the police showed another photographic array to LeVasseur from which she chose the [petitioner's] photograph as that of the person who had shot the victim. Lombardo was subsequently shown a photographic array that included the [petitioner's] picture, but he declined to identify anyone, explaining that he preferred to see the individuals in person. At the probable cause hearing and at trial, both Lombardo and LeVasseur identified the [petitioner] as the man who had shot Lombardo and Parrett." (Footnotes omitted.) *State* v. *Tatum*, supra, 219 Conn. 723–25.

Following his direct appeal, the petitioner filed numerous petitions for a writ of habeas corpus, which we will discuss, as necessary, in addressing each of the petitioner's claims on appeal. The petition that is the subject of the present appeal initially was filed on February 11, 2016. The petitioner filed an amended petition on June 27, 2018, and the respondent, the Commissioner of Correction, moved to dismiss the operative petition on July 20, 2018. The habeas court granted the respondent's motion to dismiss as to counts one (ineffective assistance of trial counsel), two (ineffective assistance of appellate counsel), three (ineffective assistance of first habeas counsel), six (due process), and seven (newly discovered evidence), but denied the motion as to counts four (ineffective assistance of second habeas counsel) and five (ineffective assistance of third habeas counsel). The habeas court held a hearing on the two remaining claims on various dates between January 17 and April 11, 2019, after which the parties were given the opportunity to file posttrial briefs. In a memorandum of decision dated August 28, 2019, the habeas court dismissed count four and denied count five of petitioner's petition. On September 9, 2019, the petitioner filed a petition for certification to appeal. The habeas court granted the petition, and this appeal followed. Additional facts and procedural history will be set forth as necessary.

I

The petitioner first claims that the habeas court

improperly dismissed counts one (ineffective assistance of trial counsel), two (ineffective assistance of appellate counsel), and three (ineffective assistance of first habeas counsel) of the operative petition on the basis of res judicata. We disagree.

We begin by setting forth our standard of review for a challenge to the dismissal of a petition for a writ of habeas corpus. "The conclusions reached by the trial court in its decision to dismiss [a] habeas petition are matters of law, subject to plenary review. . . . [When] the legal conclusions of the court are challenged, [the reviewing court] must determine whether they are legally and logically correct . . . and whether they find support in the facts that appear in the record. To the extent that factual findings are challenged, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous . . . ." (Citation omitted; internal quotation marks omitted.) *Carter* v. *Commissioner of Correction*, 133 Conn. App. 387, 392, 35 A.3d 1088, cert. denied, 307 Conn. 901, 53 A.3d 217 (2012). "[A] finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Harris* v. *Commissioner of Correction*, 107 Conn. App. 833, 838, 947 A.2d 7, cert. denied, 288 Conn. 908, 953 A.2d 652 (2008).

With this as our backdrop, we set forth the pertinent legal principles that inform our discussion. "The doctrine of res judicata provides that a former judgment serves as an absolute bar to a subsequent action involving any claims relating to such cause of action which were actually made or which might have been made. . . . The doctrine . . . applies to criminal as well as civil proceedings and to state habeas corpus proceedings. . . . However, [u]nique policy considerations must be taken into account in applying the doctrine of res judicata to a constitutional claim raised by a habeas petitioner. . . . Specifically, in the habeas context, in the interest of ensuring that no one is deprived of liberty in violation of his or her constitutional rights . . . the application of the doctrine of res judicata . . . [is limited] to claims that actually have been raised and litigated in an earlier proceeding." (Internal quotation marks omitted.) *Woods* v. *Commissioner of Correction*, 197 Conn. App. 597, 612–13, 232 A.3d 63 (2020), appeal dismissed, 341 Conn. 506,      A.3d      (2021).

"In the context of a habeas action, a court must determine whether a petitioner actually has raised a new legal ground for relief or only has alleged different factual allegations in support of a previously litigated claim." *Johnson* v. *Commissioner of Correction*, 168 Conn. App. 294, 305, 145 A.3d 416, cert. denied, 323

Conn. 937, 151 A.3d 385 (2016). "Identical grounds may be proven by different factual allegations, supported by different legal arguments or articulated in different language. . . . They raise, however, the same generic legal basis for the same relief. Put differently, two grounds are not identical if they seek different relief." (Citations omitted.) *James L.* v. *Commissioner of Correction*, 245 Conn. 132, 141, 712 A.2d 947 (1998).

"[T]he doctrine of res judicata in the habeas context must be read in conjunction with Practice Book § 23-29 (3), which narrows its application." *Kearney* v. *Commissioner of Correction*, 113 Conn. App. 223, 235, 965 A.2d 608 (2009). Practice Book § 23-29 provides in relevant part: "The judicial authority may, at any time, upon its own motion or upon motion of the respondent, dismiss the petition, or any count thereof, if it determines that . . . (3) the petition presents the same ground as a prior petition previously denied and fails to state new facts or to proffer new evidence not reasonably available at the time of the prior petition . . . ." Thus, a subsequent petition "alleging the same ground as a previously denied petition will elude dismissal if it alleges grounds not actually litigated in the earlier petition and if it alleges new facts or proffers new evidence not reasonably available at the time of the earlier petition." *Kearney* v. *Commissioner of Correction*, supra, 235. "In this context, a ground has been defined as sufficient legal basis for granting the relief sought." (Internal quotation marks omitted.) Id. In other words, "an applicant must show that his application does, indeed, involve a different legal ground, not merely a verbal reformulation of the same ground." (Internal quotation marks omitted.) *Carter* v. *Commissioner of Correction*, supra, 133 Conn. App. 394.

On appeal, the petitioner claims that the habeas court erroneously applied the res judicata doctrine to dismiss his various ineffective assistance of counsel claims "relating to LeVasseur's identification in counts one, two, and three of the operative petition . . . ." The petitioner argues that LeVasseur's identification of the petitioner previously was never raised and litigated, and that the habeas court dismissed other claims in counts one and three on the basis of res judicata, despite acknowledging that many of the claims brought in the operative petition were factually distinct from those previously raised. He essentially argues that because his allegation of ineffective assistance of his various counsel is premised on factual allegations different from those pleaded in his previous petitions, the claims are not improperly successive.

This court, however, flatly has rejected this argument on numerous occasions. See, e.g., *Gudino* v. *Commissioner of Correction*, 191 Conn. App. 263, 272, 214 A.3d 383, cert. denied, 333 Conn. 924, 218 A.3d 67 (2019) ("in the absence of allegations and facts not reasonably

available to the petitioner at the time of the original petition or a claim for different relief, a subsequent claim of ineffective assistance directed against the same counsel is subject to dismissal as improperly successive"); *Damato* v. *Commissioner of Correction*, 156 Conn. App. 165, 174, 113 A.3d 449 ("the grounds that the petitioner asserted are identical in that each alleges ineffective assistance of counsel, and, therefore, the habeas petition was properly dismissed" (internal quotation marks omitted)), cert. denied, 317 Conn. 902, 114 A.3d 167 (2015).

For example, in *Damato* v. *Commissioner of Correction*, supra, 156 Conn. App. 174, the petitioner argued that, although his claim of ineffective assistance against trial counsel had been considered previously, the allegations in support of his new claim of ineffective assistance were different. In addressing the petitioner's argument, this court explained that, "[a]lthough we recognize that the petitioner sets forth *different allegations* in support of his claim of ineffective assistance, the claim still is one of ineffective assistance of counsel involving [trial counsel]." (Emphasis in original.) Id. This court concluded that res judicata barred the petitioner's successive petition. Id.

Here, the petitioner attempts to construe narrowly the ground for counts one, two, and three of his petition as claims "regarding LeVasseur's identification" and "factually distinct from those previously raised" but ignores the fact that these allegations are used to support claims of *ineffective assistance* of trial, appellate, and first habeas counsel, which he already has raised in his first and third habeas petitions.

To be sure, the petitioner's first habeas petition was filed on July 2, 1991, claiming that he received ineffective assistance of counsel at his criminal trial. See *Tatum* v. *Warden*, Docket No. CV-911263, 1999 WL 130324 (Conn. Super. March 3, 1999), aff'd, 66 Conn. App. 61, 783 A.2d 1151 (2001). On November 24, 1997, the petitioner filed an amended petition alleging a litany of instances of Attorney Thomas McDonough's lack of skill and diligence in representing him at trial, including, among other things, that McDonough had a wealth of available information from which to construct a case of third-party culpability or misidentification but failed to use properly this information at trial. The habeas court, *Zarella, J.*, dismissed the petition on March 3, 1999, concluding that McDonough "adequately investigated the facts surrounding the crimes committed and defended the petitioner in a manner that meets the standard of a reasonably competent criminal defense attorney." Id., *13.

The petitioner's third petition for a writ of habeas corpus was filed on August 18, 2003, and subsequently was amended on June 23, 2009. See *Tatum* v. *Warden*, Docket No. CV-03-004175-S, 2010 WL 1565487 (Conn.

Super. March 23, 2010), appeal dismissed, 135 Conn. App. 901, 40 A.3d 824, cert. denied, 305 Conn. 912, 45 A.3d 98 (2012). The habeas court, *Nazzaro, J.*, explained that the petitioner's third amended petition contained numerous claims, including an assertion of various due process violations, right to counsel implications and, as applicable here, claims regarding the "ineffective assistance by criminal trial, appellate, prior habeas corpus and habeas corpus appellate counsel." Id., *1. The petitioner argued that Attorneys Sally King, Alicia Davenport, and Steven Barry, who represented the petitioner in his direct appeal, failed to bring a claim under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), challenging the trial court's intent instruction as embracing both specific and general intent. *Tatum* v. *Warden*, supra, 2010 WL 1565487, *9. The habeas court disagreed, concluding that the petitioner failed to demonstrate how appellate counsel "somehow rendered ineffective assistance . . . ." Id., *11. The habeas court similarly concluded that the petitioner failed to demonstrate how Attorney R. Bruce Lorenzen, his first habeas counsel, rendered deficient performance. Id., *2, 12.

Turning our attention to count one of petitioner's operative petition, the petitioner alleges that McDonough, his criminal trial counsel, was ineffective in his representation. The petitioner's allegations largely implicate the identification of the petitioner as the shooter, including, among other things, allegations that trial counsel failed to cross-examine adequately both Lombardo and LaVasseur about variables that could have affected their ability to perceive, remember, and identify him as the shooter; failed to make an adequate record of how many identification procedures Lombardo had participated in, or how many times he had been shown photographs of the petitioner prior to the probable cause hearing; and failed to consult with an eyewitness identification expert who would have aided in his trial preparation. In count two, the petitioner alleges, inter alia, that King, Davenport, and Barry, who represented him in his direct appeal, rendered ineffective assistance by failing to claim that the petitioner's due process rights were violated by Lombardo's identification of him at the probable cause hearing because it was unduly suggestive and insufficiently reliable, and by LeVasseur's "unduly suggestive and insufficiently reliable" "in-[court] and out-of-court identifications." Finally, in count three, the petitioner claims, inter alia, that Lorenzen, his first habeas counsel, rendered ineffective assistance of counsel by failing to challenge the effectiveness of trial and appellate counsel regarding Lombardo's and LeVasseur's identifications of him as the shooter.

Although the petitioner may have set forth some differing factual allegations in support of his claims of ineffective assistance in his present petition, he cannot

gainsay the fact that they are still claims of ineffective of assistance of counsel. See *Alvarado* v. *Commissioner of Correction*, 153 Conn. App. 645, 651, 103 A.3d 169 ("[i]dentical grounds may be proven by different factual allegations, supported by different legal arguments or articulated in different language" (internal quotation marks omitted)), cert. denied, 315 Conn. 910, 105 A.3d 901 (2014). The petitioner makes no allegations in these counts that he is seeking different relief than the relief he sought in prior petitions alleging ineffective assistance of counsel or that there are newly available facts or evidence not reasonably available at the time of his original petition. Accordingly, we conclude that the court properly declined to reach the merits of counts one, two, and three of the petitioner's successive petition because the doctrine of res judicata barred their consideration.[2]

II

The petitioner next claims that the court erroneously applied the doctrine of res judicata to his due process claim in count six and his "newly discovered evidence" claim in count seven of his operative petition, arguing that the claims have never been previously raised or litigated, and that the court improperly concluded that our Supreme Court's decisions in *State* v. *Dickson*, supra, 322 Conn. 410, and *State* v. *Guilbert*, supra, 306 Conn. 218, do not apply retroactively to the petitioner's claims. The respondent disagrees, arguing that our Supreme Court explicitly held that the constitutional rule in *Dickson* did not apply retroactively on collateral review and that our jurisprudence forecloses *Guilbert*'s retroactive application. We agree with the respondent.

In count six of the operative complaint, the petitioner alleges that his due process rights under the fourteenth amendment to the United States constitution, and article first, §§ 8 and 9, of the Connecticut constitution were violated, on the basis that the identification procedures used with certain witnesses were unduly suggestive and that the jury instructions were insufficient to educate jurors on the possibility of certain factors that can adversely impact eyewitness identification. He alleges that *Guilbert* and *Dickson* "should be retroactively applied to his case, and justice requires that he receive the benefit of those decisions." The habeas court dismissed count six on the basis of res judicata, concluding that the petitioner previously had raised and litigated in his direct appeal the due process claim concerning the identification procedures used at trial.

In count seven, titled "Newly Discovered Evidence," the petitioner argues that scientific developments not reasonably available to the petitioner at the time of the prior proceedings demonstrate that no reasonable fact finder would find the petitioner guilty of murder. The petitioner requested that the court vacate or modify his conviction or sentence. The court indicated that it was

unaware of a habeas claim named "newly discovered evidence" but interpreted it as a claim of actual innocence. In discussing the claim, the court explained that "even giving the petitioner the benefit of the doubt the law requires, he is not actually claiming that there is 'new' evidence, as in a previously undiscovered witness, an unknown video of the incident, or bodily fluids not previously subject to DNA testing." The court stated: "What the claim really amounts to is that subsequent developments in the science of eyewitness identification have changed the information and instructions a jury can be given in a criminal trial and, if the jurors in the petitioner's trial were allowed to apply the 'new' science and instructions to the same 'old' evidence presented at the petitioner's trial, they may have viewed the testimony of the eyewitnesses who identified the petitioner differently and come to a different conclusion." In construing count seven in conjunction with count six, the habeas court explained that the petitioner already had litigated the identification procedures in his direct appeal and that the doctrine of res judicata also prohibited the petitioner "from being able to relitigate this issue by changing the facts to focus on the identification procedures used in connection with witness LaVasseur, because neither the grounds nor the requested relief is any different than the issue raised on appeal." The court emphasized that "the petitioner has not alleged a single new 'fact' related to his case." The court then went on to find that nothing within the *Guilbert* or *Dickson* decisions indicate that they were to be retroactively applied or intended to provide an avenue for collateral relief.

As we have stated, "conclusions reached by the trial court in its decision to dismiss [a] habeas petition are matters of law, subject to plenary review. . . . [If] the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct . . . and whether they find support in the facts that appear in the record." (Internal quotation marks omitted.) *Boria* v. *Commissioner of Correction*, 186 Conn. App. 332, 338, 199 A.3d 1127 (2018), cert. granted, 335 Conn. 901, 225 A.3d 685 (2020). The issue of whether a judicial decision is retroactive is a question of law, also subject to plenary review. See, e.g., *Garcia* v. *Commissioner of Correction*, 147 Conn. App. 669, 674, 84 A.3d 1, cert. denied, 312 Conn. 905, 93 A.3d 156 (2014). "To the extent that factual findings are challenged, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous." (Internal quotation marks omitted.) *Boria* v. *Commissioner of Correction*, supra, 338.

On appeal, the petitioner argues that his claims have not been litigated previously because the "rationale for the Supreme Court's decision in [the petitioner's] direct appeal has since been rejected by both *Guilbert* and *Dickson*." He argues further that "[b]ecause [he] has

never before raised a claim on the basis of the retroactive application of these cases, any such claim was not previously litigated and is therefore not subject to res judicata." We disagree.

A

We first begin with a discussion of *Dickson*. In *Dickson*, our Supreme Court held that "first time in-court identifications, like in-court identifications that are tainted by an unduly suggestive out-of-court identification, implicate due process protections and must be prescreened by the trial court." *State* v. *Dickson*, supra, 322 Conn. 426. In reaching this conclusion, the court explained that it was "hard-pressed to imagine how there could be a *more* suggestive identification procedure than placing a witness on the stand in open court, confronting the witness with the person whom the state has accused of committing the crime, and then asking the witness if he can identify the person who committed the crime." (Emphasis in original.) Id., 423. The court explained that, "because the extreme suggestiveness and unfairness of a one-[on]-one in-court confrontation is so obvious, we find it likely that a jury would naturally assume that the prosecutor would not be allowed to ask the witness to identify the defendant for the first time in court unless the prosecutor and the trial court had good reason to believe that the witness would be able to identify the defendant in a nonsuggestive setting." Id., 425.

In arguing that first-time, in-court identifications are admissible, the state in *Dickson* raised numerous arguments in support of its claim to the contrary. Id., 431. Of relevance to the present case, the state, relying on our Supreme Court's decision in the petitioner's direct appeal; see *State* v. *Tatum*, supra, 219 Conn. 721; argued that "in-court identifications do not violate due process principles because they are necessary and, relatedly, because there is no feasible alternative to them." *State* v. *Dickson*, supra, 322 Conn. 434. Our Supreme Court concluded that "the holding in *Tatum* that it was 'necessary' for the state to present a first time in-court identification of the defendant at the probable cause hearing must be overruled. We simply can perceive no reason why the state cannot attempt to obtain an identification using a lineup or photographic array before asking an eyewitness to identify the defendant in court. Although the state is not constitutionally required to do so, it would be absurd to conclude that the state can simply decline to conduct a nonsuggestive procedure and then claim that its own conduct rendered a first time in-court identification necessary, thereby curing it of any constitutional infirmity." (Emphasis omitted.) Id., 435–36. Having concluded that first-time, in-court identifications must be prescreened for admissibility by the trial court, the court went on to set forth the specific procedures that the parties and the trial court must follow.

Id., 444–52.

In the present case, the petitioner argues that, "[a]lthough the retroactive application of the second part of the *Dickson* holding—the prophylactic rule—has arguably been addressed . . . the court has not yet determined whether this new constitutional rule should be retroactive." Without clearly identifying what other constitutional rule the petitioner is referring to, he argues that he should receive the benefit of society's and our Supreme Court's changes in acceptance and understanding of eyewitness identification, although recognizing that *Dickson*'s holding is "not necessarily a substantive 'rule' as courts tend to interpret that phrase . . . ." He argues, without case law support, that applying *Dickson* retroactively is especially appropriate here because *Dickson* explicitly overruled the holding in the petitioner's direct appeal. He goes on to argue that the "prophylactic rule announced in *Dickson*, regarding the specific procedures surrounding first time in-court identifications, should also apply retroactively, as it is a watershed rule of criminal procedure."

The respondent on the other hand argues that *Dickson* explicitly forecloses the petitioner's argument because it held that this constitutional rule did not apply retroactively on collateral review in that it was neither a substantive rule nor a watershed procedural rule. We agree with the respondent.

Although it appears that the petitioner may be arguing that our Supreme Court did not address the retroactivity of the constitutional rule that it promulgated in *Dickson*, such argument is meritless. Our Supreme Court explicitly addressed the applicability of its decision, stating: "[T]he new rule that we adopt today applies to the parties to the present case and to all pending cases. It is important to point out, however, that, in pending appeals involving this issue, the suggestive in-court identification has already occurred. Accordingly, if the reviewing court concludes that the admission of the identification was harmful, the only remedy that can be provided is a remand to the trial court for the purpose of evaluating the reliability and the admissibility of the in-court identification under the totality of the circumstances. . . . If the trial court concludes that the identification was sufficiently reliable, the trial court may reinstate the conviction, and no new trial would be required." (Citations omitted; emphasis omitted; footnotes omitted.) *State* v. *Dickson*, supra, 322 Conn. 450–52.

The court went on to address *Dickson*'s applicability to *collateral* challenges. It stated: "*The new rule would not apply, however, on collateral review.* This question is governed by the framework set forth in *Teague* v. *Lane*, 489 U.S. 288, 109 S. Ct. 1060, 103 L. Ed. 2d 334 (1989). See *Casiano* v. *Commissioner of Correction*, 317 Conn. 52, 62, 115 A.3d 1031 (2015). Under *Teague*,

a 'new' constitutional rule, i.e., a rule that 'was not dictated by precedent existing at the time the defendant's conviction became final,' generally does not apply retroactively. . . . Id. There are two exceptions, however, to this general rule. Specifically, a new rule will apply retroactively if it is substantive or, if the new rule is procedural, when it is 'a watershed [rule] of criminal procedure . . . implicit in the concept of ordered liberty . . . .' . . . Id., 63. Because the rule that we adopt in the present case is a new procedural rule, we must determine whether it is a watershed rule. To be considered a watershed rule, the rule must 'implicat[e] the fundamental fairness and accuracy of [a] criminal proceeding'; . . . id.; or '[alter] our understanding of the bedrock procedural elements essential to the fairness of a proceeding . . . .' Id. Watershed rules 'include those that raise the possibility that someone convicted with use of the invalidated procedure might have been acquitted otherwise.' . . . Id. The exception is 'narrowly construed . . . and, in the twenty-five years since *Teague* was decided, [the United States Supreme Court] has yet to conclude that a new rule qualifies as watershed.' Id.; but see id., 64 (this court may construe *Teague* more liberally than United States Supreme Court); id., 69 (concluding that new procedural rule requiring individualized sentencing of juvenile before life sentence may be imposed is watershed rule under *Teague*). In the present case we conclude that the rule requiring prescreening of first-time, in-court identification does not fall within the narrow exception because: (1) as we have explained, the rule is prophylactic and a violation of the rule does not necessarily rise to the level of a due process violation; and (2) the rule is merely an incremental change in identification procedures. Cf. *Beard* v. *Banks*, 542 U.S. 406, 419–20, 124 S. Ct. 2504, 159 L. Ed. 2d 494 (2004) ('the fact that a new rule removes some remote possibility of arbitrary infliction of the death sentence does not suffice to bring it within *Teague*'s second exception'); id., 419 (although new rule was intended to enhance accuracy of capital sentencing, 'because it effected an incremental change, [the United States Supreme Court] could not conclude that . . . [it was] an absolute prerequisite to fundamental fairness' . . . )." (Emphasis added.) *State* v. *Dickson*, supra, 322 Conn. 451 n.34.

Contrary to the petitioner's assertions, it is clear from *Dickson* that the constitutional rule set forth therein was not intended to provide an avenue for collateral relief. See id. ("[t]he new rule would not apply, however, on collateral review"); see also *Bennett* v. *Commissioner of Correction*, 182 Conn. App. 541, 560, 190 A.3d 877 (in *Dickson*, our Supreme Court "stated that its holding regarding prescreening was to apply only to future cases and pending related cases, and was *not to be applied retroactively in habeas actions*" (emphasis added)), cert. denied, 330 Conn. 910, 193 A.3d 50 (2018).

Although our Supreme Court did reject and overrule the rationale it previously employed in *State* v. *Tatum*, supra, 219 Conn. 721 (decision resolving petitioner's direct appeal) in reaching its conclusion in *Dickson*, the petitioner has provided us with no authority, and we have found none, that suggests that the new rule in *Dickson* can apply retroactively to him on collateral review. We similarly reject his invitation to construe more narrowly our Supreme Court's retroactivity analysis in footnote 34 of *Dickson*; see *State* v. *Dickson*, supra, 322 Conn. 451 n.34; "to apply only to the specific facts of the *Dickson* case." We remind him that our Supreme Court "has the final say on matters of Connecticut law and that the Appellate Court and Superior Court are bound by [its] precedent." *Stuart* v. *Stuart*, 297 Conn. 26, 45–46, 996 A.2d 259 (2010).

B

We next turn to the petitioner's contention that *Guilbert* applies retroactively on collateral attack and that he should receive the benefit of this decision. In *Guilbert*, the defendant argued that the trial court improperly precluded him from presenting expert testimony on the fallibility of eyewitness identification testimony and asked our Supreme Court to overrule its decisions in *State* v. *Kemp*, 199 Conn. 473, 507 A.2d 1387 (1986), and *State* v. *McClendon*, 248 Conn. 572, 586, 730 A.2d 1107 (1999), which "concluded that the average juror knows about the factors affecting the reliability of eyewitness identification and that expert testimony on the issue is disfavored because it invades the province of the jury to determine what weight to give the evidence." *State* v. *Guilbert*, supra, 306 Conn. 220–21. The court in *Guilbert* concluded that *Kemp* and *McClendon* were "out of step with the widespread judicial recognition that eyewitness identifications are potentially unreliable in a variety of ways unknown to the average juror." Id., 234. The court observed that "[t]his broad based judicial recognition tracks a near perfect scientific consensus," and that "[t]he extensive and comprehensive scientific research, as reflected in hundreds of peer reviewed studies and meta-analyses, convincingly demonstrates the fallibility of eyewitness identification testimony and pinpoints an array of variables that are most likely to lead to a mistaken identification." (Footnote omitted.) Id., 234–36. The court concluded that "the reliability of eyewitness identifications frequently is not a matter within the knowledge of an average juror and that the admission of expert testimony on the issue does not invade the province of the jury to determine what weight to give the evidence. Many of the factors affecting the reliability of eyewitness identifications are either unknown to the average juror or contrary to common assumptions, and expert testimony is an effective way to educate jurors about the risks of misidentification."[3] (Footnote omitted.) Id., 251–52.

The court observed that "federal and state courts around the country have recognized that the methods traditionally employed for alerting juries to the fallibility of eyewitness identifications—cross-examination, closing argument and generalized jury instructions on the subject—frequently are not adequate to inform them of the factors affecting the reliability of such identifications." Id., 243. The court reiterated that "a trial court retains the discretion to decide whether, under the specific facts and circumstances presented, focused and informative jury instructions on the fallibility of eyewitness identification evidence of the kind contemplated by the New Jersey Supreme Court in *Henderson*; see *State* v. *Henderson*, [208 N.J. 208, 283, 27 A.3d 872 (2011)]; would alone be adequate to aid the jury in evaluating the eyewitness identification at issue." *State* v. *Guilbert*, supra, 306 Conn. 257–58. The court emphasized "that any such instructions should reflect the findings and conclusions of the relevant scientific literature pertaining to the particular variable or variables at issue in the case," and rejected the "broad, generalized instructions on eyewitness identifications," which it previously approved in *State* v. *Tatum*, supra, 219 Conn. 734–35. *State* v. *Guilbert*, supra, 258.

On appeal, the petitioner argues that "[t]hese changes in scientific—and judicial—understanding of the flaws of eyewitness identification, and the new rules announced to reflect those changes, should apply retroactively here, and [that he] should receive the benefit of this decision." The petitioner categorizes *Guilbert* as setting forth "watershed procedural rules" and that retroactive application is appropriate here. We disagree.

There can be little dispute that *Guilbert* involved a nonconstitutional state evidentiary claim involving the reliability of eyewitness identifications. See *State* v. *Guilbert*, supra, 306 Conn. 265 n.45 ("[t]he defendant makes no claim—and there is no basis for such a claim—that the impropriety was of constitutional magnitude"). Although our Supreme Court has established "the general rule that 'judgments that are not by their terms limited to prospective application are presumed to apply retroactively . . . to cases that are pending' "; *State* v. *Hampton*, 293 Conn. 435, 457, 462 n.16, 988 A.2d 167 (2009); it generally does not permit complete retroactive application of these judgments on collateral review. Instead, our Supreme Court has clarified that "[c]omplete retroactive effect is most appropriate in cases that announce a new *constitutional* rule or a new judicial interpretation of a criminal statute." (Emphasis added; internal quotation marks omitted.) *State* v. *Turner*, 334 Conn. 660, 677 n.6, 224 A.3d 129 (2020), quoting *State* v. *Ryerson*, 201 Conn. 333, 339, 514 A.2d 337 (1986); see also *Luurtsema* v. *Commissioner of Correction*, 299 Conn. 740, 764, 12 A.3d 817 (2011) (full retroactivity for new judicial interpretation of criminal

statute); *Johnson* v. *Warden*, 218 Conn. 791, 798, 591 A.2d 407 (1991) ("there is nothing in *Teague* or *Griffith* [v. *Kentucky*, 479 U.S. 314, 322–23, 107 S. Ct. 708, 93 L. Ed. 2d 649 (1987)]), that suggests that nonconstitutional rules of criminal procedure are to be given retroactive effect").

Here, because *Guilbert* did not announce a new constitutional rule or a new judicial interpretation of a criminal statute, complete retroactive application is inappropriate. See, e.g., *State* v. *Ryerson*, supra, 201 Conn. 339. Accordingly, we conclude that the nonconstitutional evidentiary rule set forth in *Guilbert* does not apply retroactively on collateral review.

Our discussion, however, does not end there. Following *Guilbert*, our Supreme Court decided *State* v. *Harris*, 330 Conn. 91, 95, 191 A.3d 119 (2018), in which the defendant in that case argued that he was deprived of his right to due process under the federal and state constitutions when the trial court denied his motion to suppress an out-of-court and subsequent in-court identification of him by an eyewitness to the crimes of which the defendant was convicted. The court concluded that, for purposes of the federal constitution, the defendant was not entitled to suppression of the identifications in question. Id., 96. In regard to the state constitution claim, however, the court concluded "that the due process guarantee of the state constitution in article first, § 8, provides somewhat broader protection than the federal constitution with respect to the admissibility of eyewitness identification testimony . . . ." (Footnote omitted.) Id. In concluding that the federal analysis set forth in *Neil* v. *Biggers*, 409 U.S. 188, 196–97, 93 S. Ct. 375, 34 L. Ed. 2d 401 (1972), was inadequate to prevent the admission of unreliable identifications that are tainted by an unduly suggestive procedure for purposes of our state constitution, it adopted the *Guilbert* framework, finding it "preferable . . . for state constitutional as well as evidentiary claims involving the reliability of eyewitness identifications." *State* v. *Harris*, supra, 120–21. As the respondent points out in his brief to this court, our Supreme Court essentially treated *Guilbert* as creating a new state constitutional rule of criminal procedure that safeguards the due process protection against the admission of an unreliable identification.

Even if we were to construe *Guilbert*, through the lens of *Harris*, as a "new" constitutional rule of criminal procedure, this rule still would not apply on collateral review. Our conclusion is informed by the framework set forth in *Teague* v. *Lane*, supra, 489 U.S. 288. See *Thiersaint* v. *Commissioner of Correction*, 316 Conn. 89, 112, 111 A.3d 829 (2015) (adopting *Teague* framework). As already noted, it is well known that a new constitutional rule will not apply retroactively to cases on collateral review unless one of two exceptions apply:

the rule is substantive or, if the new rule is procedural, it must be "a watershed [rule] of criminal procedure . . . implicit in the concept of ordered liberty . . . ." (Internal quotation marks omitted.) *Casiano* v. *Commissioner of Correction*, supra, 317 Conn. 63.

Because the rule is clearly procedural as opposed to substantive, we must determine whether it is a "watershed" rule. The watershed exception "is reserved for those rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding. . . . Beyond fundamental fairness, the new rule also must constitute a procedure without which the likelihood of an accurate conviction is seriously diminished." (Citation omitted; internal quotation marks omitted.) *Dyous* v. *Commissioner of Mental Health & Addiction Services*, 324 Conn. 163, 181–82, 151 A.3d 1247 (2016). "The United States Supreme Court has narrowly construed [the watershed] exception . . . ." *Casiano* v. *Commissioner of Correction*, supra, 317 Conn. 63. In fact, "in the 32 years since *Teague* . . . the [United States Supreme Court] has *never* found that any new procedural rule actually satisfies that purported exception." (Emphasis in original.) *Edwards* v. *Vannoy*, U.S. , 141 S. Ct. 1547, 1555, 209 L. Ed. 2d 651 (2021).[4]

In the present case, we conclude that the *Guilbert* framework for evaluating the reliability of an identification that is the result of an unnecessarily suggestive identification procedure, which was adopted by our Supreme Court in *Harris*, does not fall within the narrow watershed exception pursuant to *Teague* because, like in *Dickson* (1) this rule is "prophylactic and a violation of the rule does not necessarily rise to the level of a due process violation," and (2) the rule amounts to an incremental change in identification procedures. See *State* v. *Dickson*, supra, 322 Conn. 451 n.34. As the court in *Harris* explained, the adopted *Guilbert* framework will "*enhance* the accuracy of the constitutional inquiry into the reliability of an identification that has been tainted by improper state conduct" and allow the "reliability analysis to evolve as the relevant science *evolves*." (Emphasis added.) *State* v. *Harris*, supra, 330 Conn. 120–21. Accordingly, *Guilbert* does not apply on collateral review for these reasons too.

C

In light of our conclusion that the rules announced in *Dickson* and *Guilbert* do not apply retroactively on collateral review, we conclude that the petitioner's count six and count seven claims were properly dismissed on the basis of res judicata. On his direct appeal before our Supreme Court, the petitioner argued that the trial court deprived him of his due process rights by allowing "the admission of an in-court identification of the [petitioner] after an unnecessarily suggestive pretrial identification procedure had been conducted

. . . ." *State* v. *Tatum*, supra, 219 Conn. 723. The court concluded, inter alia, that the "identification of him at the probable cause hearing was not the result of an unnecessarily suggestive procedure." Id., 732. Because the petitioner previously has raised and litigated these claims pertaining to his identification, dismissal was appropriate. See *Woods* v. *Commissioner of Correction*, supra, 197 Conn. App. 612.

### III

The petitioner's final claim is that the habeas court erred in denying count five of the operative petition, which alleged ineffective assistance against his third habeas counsel. Although the petitioner makes more than a dozen claims of ineffective assistance against his third habeas counsel, he takes issue with the court's determination as to two of them. He argues that count five should not have been denied because the habeas court erred (1) when it disposed of his ineffective assistance claim by way of procedural default for his failure to allege and prove that his appellate counsel were ineffective for failing to challenge LeVasseur's identification on the basis of due process, and (2) when it determined that his "third habeas counsel was not ineffective for failing to allege and prove a claim that trial counsel was ineffective for failing to investigate and present a defense of third-party culpability." For the reasons discussed herein, we conclude denial of count five was proper.

In the habeas court's memorandum of decision, the court addressed the petitioner's factual claim that his third habeas counsel, Paul Kraus, "was ineffective for failing to allege and prove that counsel who handled the petitioner's direct appeal . . . was ineffective for failing to argue that LaVasseur's identification of the petitioner violated his due process rights." The court stated in relevant part: "The court finds that the petitioner has procedurally defaulted on this claim. . . . If the petitioner desired, all of the information necessary to challenge LaVasseur's identification on appeal was available at the time the petitioner raised similar challenges to Lombardo's identification. Appellate counsel was not called to testify, so the reason[s] he chose only to attack only Lombardo's identification are unknown. The petitioner also failed to present any other substantive evidence of the alleged viability of raising claims, or the specific nature of the claims, that supposedly could have been brought to challenge LaVasseur's identification. Having failed to do so, the petitioner has failed to overcome the presumption that appellate counsel's choice of issues to raise on appeal was based on sound appellate strategy." (Citation omitted.)

On appeal, the petitioner argues that this claim as a matter of law cannot be barred by procedural default. The respondent agrees with the petitioner, conceding that "the petitioner was not required to make a thresh-

old showing of cause and prejudice as a predicate for alleging ineffective assistance of habeas counsel" in this instance. See, e.g., *Johnson* v. *Commissioner of Correction*, 285 Conn. 556, 570, 941 A.2d 248 (2008) (cause and prejudice test does not apply when petitioner brought habeas claim alleging ineffective assistance of trial counsel). Despite this misstep by the habeas court, the respondent argues that the habeas court was right to deny this claim but for the wrong reasons and argues that this court should affirm the habeas court's ruling on the alternative ground of collateral estoppel.[5] We agree with the respondent.

"The common-law doctrine of collateral estoppel, or issue preclusion, embodies a judicial policy in favor of judicial economy, the stability of former judgments and finality. . . . Collateral estoppel . . . is that aspect of res judicata which prohibits the relitigation of an issue when that issue was actually litigated and necessarily determined in a prior action between the same parties upon a different claim. . . . For an issue to be subject to collateral estoppel, it must have been fully and fairly litigated in the first action. It also must have been actually decided and the decision must have been necessary to the judgment. . . .

"An issue is actually litigated if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined. . . . An issue is necessarily determined if, in the absence of a determination of the issue, the judgment could not have been validly rendered . . . . [C]ollateral estoppel [is] based on the public policy that a party should not be able to relitigate a matter which it already has had an opportunity to litigate. . . . Stability in judgments grants to parties and others the certainty in the management of their affairs which results when a controversy is finally laid to rest." (Citation omitted; internal quotation marks omitted.) *Johnson* v. *Commissioner of Correction*, supra, 168 Conn. App. 310.

In this appeal, the petitioner essentially argues that he should not be prevented from pursuing the claim that his third habeas counsel, Kraus, failed to allege and prove that appellate counsel, King, Barry, and Davenport, were ineffective for failing to challenge LeVasseur's identification. Upon our review of the record, however, we conclude that the dispositive issue already has been litigated and, thus, is precluded by the doctrine of collateral estoppel. It previously has been determined that admission at trial of the identifications of the petitioner were proper. For example, following his first habeas trial, the habeas court, *Zarella, J.*, found that "the state's case was strong with regard to the identification of the petitioner despite the initial misidentifications. Not only did LeVasseur and Lombardo identify the petitioner as being at the scene but a third person, [Charles] Wilson, who was also at the scene of the

shooting told the police that he saw the gunman. Despite his reluctance to testify at the criminal trial and his claim of no present recollection, Wilson's sworn statement to the police described the gunman to the jury as [six feet, three inches] and about 170 pounds. . . . This clearly would have eliminated Frazer as the shooter . . . ." (Citation omitted.) See *Tatum* v. *Warden*, supra, 1999 WL 130324, *11. The habeas court further explained that, "[w]hile LeVasseur and Lombardo had both initially identified Frazer as the perpetrator, there existed a plausible and simple explanation for that identification. Frazer had striking facial similarities to the petitioner. However, when LeVasseur viewed Frazer in a lineup, he was eliminated as the perpetrator based upon his height." Id. As the habeas court after the first habeas trial explained, "While Frazer bore a striking facial resemblance to the petitioner, Frazer is approximately [five feet, three inches] or [five feet, four inches] tall and the petitioner is at least [six feet, one inch] tall." Id., *4. Additionally, "both witnesses prior to the events of February 25, 1988, had contact with both the petitioner and Frazer." Id., *11.

This previous decision, supported by the facts in the record, in addition to our Supreme Court's decision in the petitioner's direct appeal, which addressed the constitutionality and appropriateness of the identifications in the case, demonstrate that the issue of LeVasseur's identification of the petitioner as the shooter was determined to be reliable and admissible at that time. These previous decisions rejected the argument that trial counsel was ineffective for failing to properly challenge the identifications of the petitioner as the shooter. Because this already litigated issue underlies and is determinative of the petitioner's current ineffective assistance claim against Kraus, we conclude that collateral estoppel bars his claim.

As a final task, we must address the petitioner's related argument that the habeas court improperly concluded that Kraus provided effective assistance of counsel although he failed to allege and prove a claim that trial counsel was ineffective for failing to investigate and present a defense of third-party culpability. He argues that because "LeVasseur and Lombardo separately identified Frazer within hours of the shooting, development of the third-party culpability claim in this case was critical." We are not convinced.

We begin by setting forth our well settled standard of review governing ineffective assistance of counsel claims. "In a habeas appeal, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, but our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary." (Internal quotation marks omitted.) *McClean* v. *Commissioner of Correction*, 103

Conn. App. 254, 262, 930 A.2d 693 (2007), cert. denied, 285 Conn. 913, 943 A.2d 473 (2008).

"Furthermore, it is well established that [a] criminal defendant is constitutionally entitled to adequate and effective assistance of counsel at all critical stages of criminal proceedings. . . . This right arises under the sixth and fourteenth amendments to the United States constitution and article first, § 8, of the Connecticut constitution. . . . As enunciated in *Strickland* v. *Washington*, [466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)], this court has stated: It is axiomatic that the right to counsel is the right to the effective assistance of counsel. . . . A claim of ineffective assistance of counsel consists of two components: a performance prong and a prejudice prong. To satisfy the performance prong . . . the petitioner must demonstrate that his attorney's representation was not reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law. . . . To satisfy the prejudice prong, a claimant must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . [I]n order to demonstrate that counsel's deficient performance prejudiced his defense, the petitioner must establish that counsel's errors were so serious as to deprive the [petitioner] of . . . a trial whose result is reliable. . . . Because both prongs of *Strickland* must be demonstrated for the petitioner to prevail, failure to prove either prong is fatal to an ineffective assistance claim." (Citations omitted; internal quotation marks omitted.) *Llera* v. *Commissioner of Correction*, 156 Conn. App. 421, 426–27, 114 A.3d 178, cert. denied, 317 Conn. 907, 114 A.3d 1222 (2015).

"[J]udicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. . . . In reconstructing the circumstances, a reviewing court is required not simply to give [counsel] the benefit of the doubt . . . but to affirmatively entertain the range of possible reasons . . . counsel may have had for proceeding as [he] did . . . ." (Internal quotation marks omitted.) *Cancel* v. *Commissioner of Correction*, 189 Conn. App. 667, 693, 208 A.3d 1256, cert. denied, 332 Conn. 908, 209 A.3d 644 (2019). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible

options are virtually unchallengeable . . . ." (Internal quotation marks omitted.) *Gaines* v. *Commissioner of Correction*, 306 Conn. 664, 680, 51 A.3d 948 (2012). "[T]here are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." (Internal quotation marks omitted.) *Meletrich* v. *Commissioner of Correction*, 332 Conn. 615, 637, 212 A.3d 678 (2019).

For assessing claims of ineffective assistance based on the performance of prior habeas counsel, the *Strickland* standard "requires the petitioner to demonstrate that his prior habeas counsel's performance was ineffective and that this ineffectiveness prejudiced the petitioner's prior habeas proceeding. . . . [T]he petitioner will have to prove that . . . prior habeas counsel, in presenting his claims, was ineffective and that effective representation by habeas counsel establishes a reasonable probability that the habeas court would have found that he was entitled to reversal of the conviction and a new trial . . . . Therefore, as explained by our Supreme Court in *Lozada* v. *Warden*, 223 Conn. 834, 613 A.2d 818 (1992), a petitioner claiming ineffective assistance of habeas counsel on the basis of ineffective assistance of [appellate] counsel must essentially satisfy *Strickland* twice: he must prove both (1) that his appointed habeas counsel was ineffective, and (2) that his [trial] counsel was ineffective." (Citations omitted; internal quotation marks omitted.) *Ham* v. *Commissioner of Correction*, 152 Conn. App. 212, 230, 98 A.3d 81, cert. denied, 314 Conn. 932, 102 A.3d 83 (2014).

At the heart of the petitioner's claim is his contention that Kraus was ineffective in failing to allege and prove a claim that trial counsel, McDonough, was ineffective in his investigation of a third-party suspect, namely, Frazer, and presentation of such defense based specifically on Frazer's culpability rather than generally on the misidentification of the petitioner. The petitioner makes various arguments that Kraus' performance was deficient as a result of not challenging trial counsel's alleged failure (1) to ask Frazer about certain statements that were contained in his police statement, (2) to ask Frazer about his whereabouts on the night in question, (3) to question Frazer about certain equipment that had been at Parrett's apartment, which would have given Frazer a reason to go to that apartment, and (4) to call Wilson, who witnessed the shooting, to testify about certain information in his police statement, including the statement that LeVasseur told him that "the man at the door was the 'same [man] who had recently been arrested by the police.' " According to the petitioner, this information, combined with LeVasseur's and Lombardo's initial identifications of Frazer as the shooter, was sufficient to give a charge on third-party culpability.

On the basis of our review of the record, we agree with the habeas court that the petitioner failed to sufficiently demonstrate that the evidence was adequate to support a viable third-party culpability defense. See *Santiago* v. *Commissioner of Correction*, 87 Conn. App. 568, 590, 867 A.2d 70 ("[w]ithout more, none of those statements contain sufficient substance to support a viable third-party culpability defense, particularly when taken in conjunction with the considerable evidence that instead implicated the petitioner"), cert. denied, 273 Conn. 930, 873 A.2d 997 (2005). Although there is evidence from which a reasonable fact finder could find that Frazer, at some time prior to the day of the crime, was present at the apartment where the shooting occurred, the necessary factual nexus between the crime committed and Frazer is lacking. See *State* v. *Arroyo*, 284 Conn. 597, 610, 935 A.2d 975 (2007) ("[e]vidence that would raise only a bare suspicion that a third party, rather than the defendant, committed the charged offense would not be relevant to the jury's determination"). The habeas court accurately noted that nothing, other than the initial misidentifications, raised by the petitioner "connect[ed] [Frazer] to the apartment on the date of this incident." Moreover, certain statements made to the police by Wilson, who allegedly witnessed the shooting, are no more supportive of such defense. As previously discussed, Wilson's statement to police actually identified the shooter as being six feet, three inches tall, which effectively eliminated Frazer, who was five feet, three inches or five feet, four inches tall, as the shooter. Although there is no question that Lombardo and LeVasseur initially identified Frazer as the perpetrator, they corrected their initial identifications to identify the petitioner as the shooter. As the record demonstrates, there existed a plain explanation for that initial identification—Frazer had striking facial similarities to the petitioner. There was nothing more, however, that directly tied Frazer to the crime scene on the night in question. See, e.g., *State* v. *Corley*, 106 Conn. App. 682, 690, 943 A.2d 501 ("although the proposed evidence may have shown that [the third-party suspect] bore a physical resemblance to the defendant, there was no evidence that [the third-party suspect] and the other male were involved in the" crime committed), cert. denied, 287 Conn. 909, 950 A.2d 1285 (2008).

Accordingly, we agree with the habeas court that the petitioner failed to demonstrate that his trial counsel was ineffective on this basis. Because the petitioner has failed to demonstrate that trial counsel was ineffective, the petitioner's claim necessarily fails against his third habeas counsel.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The fifth amended petition, which only corrected scrivener's errors in the fourth amended petition, was filed subsequent to the dates of the active

return and reply. The habeas court indicated that the parties agreed to allow the earlier return and reply to the fourth amended petition to stand as the responsive pleadings.

[2] We note that, in addressing count two of the petitioner's petition, it appears that the habeas court initially recognized that it was a claim of ineffective assistance but then treated it as a freestanding due process claim. The court ultimately dismissed the allegation on the basis of res judicata, concluding that our Supreme Court had previously rejected the claim in the petitioner's direct appeal. Notwithstanding this oversight, we conclude that the habeas court properly dismissed count two on the basis of res judicata, albeit for a somewhat different reason. See *Sanchez* v. *Commissioner of Correction*, 203 Conn. App. 752, 760–61, 250 A.3d 731 ("[i]t is axiomatic that [w]e may affirm a proper result of the trial court for a different reason" (internal quotation marks omitted)), cert. denied, 336 Conn. 946, 251 A.3d 77 (2021).

[3] On the basis of that comprehensive scientific research, the court listed a nonexclusive list of factors affecting the reliability of eyewitness identifications: "(1) there is at best a weak correlation between a witness' confidence in his or her identification and the identification's accuracy; (2) the reliability of an identification can be diminished by a witness' focus on a weapon; (3) high stress at the time of observation may render a witness less able to retain an accurate perception and memory of the observed events; (4) cross-racial identifications are considerably less accurate than identifications involving the same race; (5) memory diminishes most rapidly in the hours immediately following an event and less dramatically in the days and weeks thereafter; (6) an identification may be less reliable in the absence of a double-blind, sequential identification procedure; (7) witnesses may develop unwarranted confidence in their identifications if they are privy to postevent or postidentification information about the event or the identification; and (8) the accuracy of an eyewitness identification may be undermined by unconscious transference, which occurs when a person seen in one context is confused with a person seen in another." *State* v. *Guilbert*, supra, 306 Conn. 253–54. The court concluded that these factors satisfy the test set forth in *State* v. *Porter*, 241 Conn. 57, 698 A.2d 739 (1997), cert. denied, 523 U.S. 1058, 118 S. Ct. 1384, 140 L. Ed. 2d 645 (1998), for the admissibility of scientific evidence. See *State* v. *Guilbert*, supra, 254.

[4] In *Edwards* v. *Vannoy*, supra, 141 S. Ct. 1557, the United States Supreme Court recently observed that it "has flatly proclaimed on multiple occasions that the watershed exception is unlikely to cover any more new rules. Even 32 years ago in *Teague* itself, the [c]ourt stated that it was 'unlikely' that additional watershed rules would 'emerge.' "

[5] Affirmance of a judgment on alternative grounds is proper when those grounds present pure questions of law, the record is adequate for review, and the petitioner will suffer no prejudice because he has the opportunity to respond to proposed alternative grounds in the reply brief. *State* v. *Martin M.*, 143 Conn. App. 140, 151–53, 70 A.3d 135, cert. denied, 309 Conn. 919, 70 A.3d 41 (2013).